IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
_____ ✓ _____ DIVISION

FILED
FT. SMITH DIST.

DAVID HARPER, D.D.S., M.S.                    PLAINTIFF & PETITIONER    2015 JUL 10  AM 10 02

V.                    NO. CV-15-0569    _____    (Peggy Henderson)
CIRCUIT CLERK SEB. CO.

UNUM GROUP and THE PAUL REVERE
LIFE INSURANCE COMPANY                    DEFENDANTS & RESPONDENTS

---

## COMPLAINT AND PETITION FOR DECLARATORY JUDGMENT

---

### I.    Introduction

1.     David Harper, D.D.S., M.S., who practiced orthodontics in Fort Smith and surrounding areas for 29 years before suffering a disabling injury in 2013, brings this action for breach of contract, bad faith, and declaratory relief to recover benefits due to him under an individual long term disability insurance policy issued and administered by the defendants.  Dr. Harper purchased the policy in 1992 and paid premiums on it for 21 years.

2.     This action is governed by state law and is **_not_** governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

3.     In accordance with Ark. R. Civ. P. 10(d), a copy of the policy, as produced by the defendants but still incomplete, is attached.  Exhibit 1 (Claim File at 63-131).[1] This policy is missing the current Policy Schedule and possibly other parts.

### II.    Parties

4.     Dr. Harper was a resident of Sebastian County, Arkansas, at the time of the loss described herein.

---

[1] The Claim File cited herein was produced by Unum on 01/23/2015 and was thereafter page-numbered in its originally-produced order by Dr. Harper's attorneys.

5.     Unum Group, formerly known as UnumProvident Corporation, is a foreign corporation, incorporated by Delaware, with its principal place of business in Tennessee.   According to records on file with the Arkansas Secretary of State, the registered agent for this defendant is Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

6.     The Paul Revere Life Insurance Company ("Revere") is a foreign corporation, incorporated by Massachusetts, with its principal place of business in Massachusetts.   According to records on file with the Arkansas Insurance Department, the registered agent for this defendant is Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-3726.

7.     Hereinafter, "Unum" refers collectively to Unum Group and Revere.

### III.     Jurisdiction & Venue

8.     This court has jurisdiction under Ark. Code Ann. § 16-13-201, which states that circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights or the redress of civil wrongs, except when exclusive jurisdiction is given to other courts, and this is such an action; and under Arkansas Constitution, Amendment 80 § 6(A), which states circuit courts are established as trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Constitution, and this is such a matter; and under Ark. Code Ann. § 16-111-103(a), which states that courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be obtained, and Dr. Harper seeks declaratory relief.

9.     This court is the proper venue under Ark. Code Ann. § 23-79-204, which states that an action brought by an insured against an insurer as to a loss occurring under an insurance policy shall be brought in either the county in which the loss occurred or the county of the insured's residence at the time of the loss.  Dr. Harper was a resident of Sebastian County, Arkansas, at the time of the loss described herein.

### IV.    Relationship between Unum Group and Revere

10.     Revere issued to Dr. Harper the disability insurance policy discussed herein and attached hereto.  Exhibit 1 (Claim File at 63-131).

11.     By information and belief, Revere does not have any employees, and all persons who conduct business on behalf of Revere are employed by Unum Group.  *See, e.g.,* First Amended Complaint for Damages with Jury Demand, ¶ 22, in *Stone v. John Hancock Life Ins. Co., et al.,* Mass. Superior Court No. 2013-1805-A (alleging same regarding similar subsidiary of Unum Group).

12.     By information and belief, Unum Group or its predecessor and Revere entered a General Services Agreement under which Unum Group has responsibilities for handling claims under policies issued by Revere.  *See Merrick v. Paul Revere Life Ins. Co.,* 594 F. Supp. 2d 1168, 1173 (D. Nev. 2008) (discussing same).

13.     On November 18, 2004, examiners on behalf of all 50 states, the District of Columbia, the American Samoa, and the U.S. Department of Labor wrote this as part of an investigation into Unum's unfair practices regarding disability insurance policies:

> The Parent Company [Unum Group] uses common management processes in the administration of the business for Unum, Revere and Provident [Unum Group's subsidiaries] as well as for its New York subsidiary, First Unum Life Insurance.  Specifically, [Unum Group] Companies adjust claims for each member insurer from common locations using common procedures.  The issues identified by the Multistate

3

Examination are therefore assumed to also be present for each member company.

Report of the Targeted Multistate Conduct Examination ("Multistate Examination Report") at 5.

14.     Thus, by information and belief, Unum Group performed the claims handling practices discussed herein on behalf of its subsidiary Revere and in relation to the disability insurance policy issued to Dr. Harper by Revere.

### V.     Unum's History of Unfair Practices

#### A.     Essay, Cases, and News Stories

15.     In 2007, John H. Langbein, Sterling Professor of Law and Legal History at Yale University, wrote in an essay that "Authoritative evidence has come to light that for a period of some years, stretching from the mid-1990s into the present decade, Unum/Provident Corporation (Unum) [now Unum Group], the largest American insurer specializing in disability insurance, was engaged in a deliberate program of bad faith denial of meritorious benefit claims." Langbein, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA,* 101 Northwestern Univ. Law Review 1315 (2007).

16.     In *Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 226 (2004), one of the many cases cited by Professor Langbein, the district court collected citations to nearly 20 cases involving Unum Group's subsidiaries and wrote that their misconduct "... reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." *Id.* at 248 (citing cases).

4

17.     In *Merrick*, decided in 2008, the district court wrote that, even after a Multistate Examination and California Investigation into Unum's unfair practices and Unum's agreement to change those practices, Unum remained "[u]nrepentant," 594 F. Supp. 2d at 1182; "[f]ailed to present the testimony of a single current claims handling or management level employee who could testify … that any of the types of bad faith conduct evidenced in Merrick's claim file and in the institutional documents had changed," *id.* at 1183; "engaged in a widespread corporate plan, and conscious course of corporate conduct firmly grounded in established company policy, to disregard Merrick's rights and the rights of tens of thousands, if not hundreds of thousands of other policyholders," *id.* at 1188; "acted maliciously with trickery and deceit towards Merrick and thousands of others of their insureds and again subjected hundreds of thousands of insureds to the risk of their misconduct; *id.* at 1189; and "have never acknowledged or taken responsibility for their misconduct," *id.* at 1190.

18.     NBC's *Dateline* and CBS's *60 Minutes* each reported on Unum's above-discussed practices. *Dateline:  Benefit of the Doubt* (NBC television broadcast, Oct. 13, 2002) (cited in Langbein, n.17.); *60 Minutes:  Did Insurer Cheat Disabled Clients?* (CBS television broadcast, Nov. 17, 2002) (cited in Langbein, n.18.).

### B.     Misleading about ERISA

19.     Unum's historical unfair practices included misleading claimants into believing their claims were governed by the federal Employee Retirement Income Security Act of 1974 (ERISA), which is less favorable to insureds, when the claims were actually governed by state law, which is more favorable to insureds.

20.     A memorandum written by a Unum executive in 1995 shows Unum's self-interested motivation for misleading claimants about ERISA:

> The advantages of ERISA coverage in litigious situations are enormous: state law is preempted by federal law, there are no jury trials, there are no compensatory or punitive damages, relief is usually limited to the amount of benefit in question, and claims administrators may receive a deferential standard of review.  The economic impact on Provident [now part of Unum Group] from having policies covered by ERISA could be significant. *As an example, Glenn Felton identified 12 claim situations where we settled for $7.8 million in the aggregate.  If these 12 cases had been covered by ERISA, our liability would have been between zero and $0.5 million.*

Provident Internal Memorandum dated Oct. 2, 1995 (published as Exhibit 7 to Ray Bourhis, *Insult to Injury:  Insurance, Fraud, and the Big Business of Bad Faith* (2005)) (emphasis added).

21.     On October 3, 2005, the California Insurance Commissioner issued a Decision and Order of Insurance Commissioner Upon Settlement ("California Decision"), discussed further below, in which it found that Unum's illegal claims handling practices included "Communicating to claimants under individual or government employer-sponsored group policies (*i.e.*, policies not covered by ERISA) in a manner that could mislead the claimant into believing ERISA would apply, thus limiting a claimant's rights on appeal (among other things)."  California Decision at 5.

### C.     Multistate Examination

22.     Beginning in 2003, examiners began the above-mentioned multistate examination into Unum's unfair claims practices.[2]  Multistate Examination Report at 3.

---

[2] The companies named in the Multistate Examination Report, and involved in the California investigation discussed below, were Unum Group's three subsidiaries:  Revere, Unum Life Insurance Company of America, and Provident Life and Accident Insurance Company.  The latter

23.    The examiners wrote that an initial review of claim files revealed several general areas of concern, including:  (1) excessive reliance upon in-house medical professionals; (2) unfair construction of attending physician or IME reports; (3) failure to investigate the totality of the claimant's medical condition; and (4) inappropriate burden placed on claimants to justify eligibility for benefits.  Multistate Examination Report at 6-9.

24.    The examiners and the lead states[3] concluded that the level of claim handling errors identified was sufficient to merit further review and regulatory action, but Unum promptly agreed to a Plan of Corrective Action, thus obviating the need for additional investigation and review.  Multistate Examination Report at 9-10.

25.    On November 3, 2004, Unum entered a Multistate Regulatory Settlement Agreement with the insurance regulators of 49 states (all but California), the District of Columbia, the American Samoa, and the U.S. Department of Labor.

26.    Unum agreed to pay a fine of $15 million and make changes in its Claim Reassessment Process, Claim Organization and Procedures, and Corporate Governance, among other things.  Multistate Examination Report at 12-13.

27.    The changes to Claim Organization and Procedures that Unum agreed to, several of which are relevant here, were:  (1) the engagement of experienced claim personnel at the earliest possible stage of claim reviews; (2) increased emphasis upon claim staff accountability for compliance with the terms of insurance policies and applicable law; (3) increased involvement of higher levels of claim management staff in

---

two subsidiaries are not parties here, although Revere is.  For simplicity, this complaint refers to the companies involved in the Multistate Examination as "Unum."

[3] The lead states were Maine, Massachusetts, and Tennessee, which were states in which Unum Group's subsidiaries were domiciled, Revere being domiciled in Massachusetts.

each claim denial or claim termination decision; (4) creation of a separate compliance/accountability function at the claim denial and claim termination level; (5) assurance that co-morbid conditions are properly evaluated at every level of claim review; (6) increased utilization of IME's; (7) additional compliance training for all claim staff, with emphasis upon the results of the multistate examination, the Plan, and the NAIC Unfair Claim Settlement Practices Act; and (8) additional training for group policyholder human resources personnel so as to better facilitate the process for LTD claims. Multistate Examination Report at 12-13; *see also* Multistate Regulatory Settlement Agreement (expounding upon the above).

28. As part of both the Multistate Examination and the California Investigation discussed below, Unum was required to reopen and reassess denied claims from 1997-2005.

29. For those claimants who completed the complex reassessment process, Unum reversed position on 41.7% of the claims, demonstrating the high rate of wrongful denials. *Merrick*, 594 S. Supp. 2d at 1175.

### D. California Investigation

30. California having opted out of the Multistate Settlement Agreement, a separate investigation into Unum's unfair practices in that state continued, conducted by the California Insurance Commissioner.

31. On October 3, 2005, the California Insurance Commissioner issued a Decision and Order of Insurance Commissioner Upon Settlement (the above-mentioned "California Decision") itemizing 28 claims handling practices by Unum that violated state law, including several forms of knowing misconduct. California Decision at 2-5.

32.     The California Insurance Commissioner ordered that Unum was required to pay over $8 million in additional penalties and was prohibited from engaging in the 28 illegal claims handling practices. California Decision at 5-6.

### VI.     Unum's Conduct in This Case

#### A.     Policy

33.     On 01/09/1993, Revere issued a long term disability insurance policy to Dr. Harper providing income benefits in the event of disability. Exhibit 1 (Claim File at 63-131).

34.     The policy, as produced by Unum in response to requests for records relating to Dr. Harper's claim discussed herein, was marked with policy numbers 0102590863 and 0102590864. Claim File at 63 & 116.

35.     The policy was marked "Insured David M Harper, DDS," showing that it was issued to an individual and no others. Claim File at 63 & 116.

36.     The policy provides income disability benefits and other benefits. Claim File at 65, 67, 118 & 442.

37.     The policy includes a Lifetime Total Disability Benefit Rider, providing that, while Dr. Harper remains disabled, Unum shall pay monthly disability benefits to him "as long as You live." Claim file at 89 & 442.

38.     The policy includes a Your Occupation Rider, providing that Unum shall pay benefits to Dr. Harper when he is disabled from "the occupation or occupations in which You are regularly engaged at the time disability begins," meaning clinical orthodontist. Claim file at 73 & 442.

39.    The policy includes a Cost of Living Adjustment (COLA) Rider, providing that the monthly disability benefit shall increase from $12,500 to $15,000 by the time Dr. Harper reaches his 65th birthday in 2018.  Claim file at 85, 433, 442, 669 & 868-869.

40.    The policy includes ambiguous language that, according to Unum, in the event of disability occurring after age 55 due to Sickness and not Injury, reduces the full monthly benefit once Dr. Harper reaches age 65 from $12,500 ($15,000 with COLA rider) to $7,500.00 ($9,000 with COLA rider).  Claim File at 85, 433, 442, 669, 678-679, 682, 820 & 868-869.

41.    Dr. Harper disputes Unum's position on the above-mentioned ambiguous language.

## B.    Injury

42.    On or about 07/01/2013, while on vacation at a house he owned in Florida, Dr. Harper suffered an injury by striking his head on the ceiling while installing a ceiling fan.

43.    Although Dr. Harper did not realize it at the time, the injury would cause him to suffer neuropathy, pain, numbness, tingling, and weakness in the right hand, among other things, that would not relent with time.

44.    The injury and above-described symptoms caused Dr. Harper to be unable to resume his occupation as an orthodontist upon his return to Arkansas, thus causing him to be disabled by injury under the terms of Unum's policy.  Although Dr. Harper attempted to work for four days, he experienced pain and numbness, was unable to perform some tasks, and dropped several instruments.

10

45.     Monsignor John O'Donnell was a guest at Dr. Harper's house, was assisting with the installation of the ceiling fan, and witnessed the injury.

46.     On 10/06/2013, Monsignor O'Donnell wrote a letter describing Dr. Harper's injury that was provided to Unum for its consideration. Claim file at 631.

### C.     Claim Handling

47.     Dr. Harper returned to Fort Smith, received no relief from his symptoms, and received medical care for those symptoms from treating physicians, but was still unable to perform his occupation as an orthodontist.

48.     On or before 07/25/2013, per Unum's claim file, Dr. Harper notified Unum of his disability. Claim File at 35.

49.     On 08/16/2013, per Unum's request, Dr. Harper submitted a Unum Individual Disability Claim Form, identifying on or about 07/01/2013 (the approximate date of the ceiling fan installation injury) as the date that the disability began and the date that symptoms were first noticed. Claim File at 152.

50.     Unum did not dispute that Dr. Harper was disabled under the terms of its policy.

51.     On 11/12/2013, Unum wrote in a letter to Dr. Harper that "we find you disabled" but that Unum was still in the process of determining whether his disability was due to injury or sickness. Claim File at 650.

52.     On 12/03/2013, Unum wrote in a letter to Dr. Harper that it decided his disability was due to sickness and not injury, in which case Dr. Harper would not receive the full disability benefit ($15,000 per month after age 65 with COLA increase) but would only receive a reduced disability benefit ($9,000 per month after age 65 with

11

COLA increase), a difference of $6,000 per month from age 65 to the end of Dr. Harper's life.  Claim File at 679.

53.      On 05/29/2014, Dr. Harper wrote a letter to Unum appealing Unum's decision that he was not entitled to the full disability benefit, pointing out several factual inaccuracies in its letter to Dr. Harper denying full benefits.  739.

54.      In support of his appeal, Dr. Harper provided two letters from Michael Standefer, M.D., a treating neurosurgeon; a letter from Janice Keating, M.D., a treating neurologist; the above-mentioned letter from Monsignor O'Donnell describing the injury; and four letters from former employees who had worked with Dr. Harper for a combined 81 years before his disability, stating that Dr. Harper never missed a day of work due to illness or injury before his disabling injury on or about 07/01/2013, but was unable to perform orthodontics thereafter.  Dr. Harper wrote that he had absolutely no medical history of neck pain or paresthesia, chronic or otherwise.  Claim File at 738-751.

55.      On 07/21/2014, Unum wrote a letter to Dr. Harper denying his appeal.  818.

### D.      Overruling Treating Physicians

56.      One of the areas of concern during the Multistate Examination into Unum's unfair practices was "unfair construction of attending physician ... reports."  Examination Report at 7.

57.      One of the 28 illegal claims handling practices identified during the California Investigation into Unum's unfair practices was "[o]verruling the opinion of the attending physician after. Respondents' in-house medical personnel have conducted a 'paper review' of the medical file."  California Decision at 3.

58.     Continuing those unfair practices here, Unum rejected without a reasonable basis the conclusions of Dr. Harper's two treating physicians that Dr. Harper was disabled due to injury.

59.     On 09/26/2013, Dr. Standefer, Dr. Harper's treating neurosurgeon, wrote "Historically, this appears to be a *traumatic* (*i.e.,* accidental) event resulting in neck, shoulder and associated right upper extremity pain and paresthesias consistent with right C7 radiculopathy." Claim File at 541 (emphasis added).

60.     On 04/01/2014, Dr. Keating, Dr. Harper's treating neurologist, wrote "… this injury was the *most likely etiology* for his acute radicular pain." Claim File at 745 (emphasis added).

61.     On 04/14/2014, Dr. Standefer wrote "Based on the available information, I am inclined to feel that the patient sustained a posttraumatic cervical nerve root compression as a result of the *accident* associated with installation of the ceiling fan." Claim File at 743 (emphasis added).

62.     In its letter denying Dr. Harper's appeal, Unum overruled the above conclusions and relied instead upon the conclusions of its in-house physicians, discussed below. Claim File at 818.

### E.     In-House Physicians

63.     One of the areas of concern during the Multistate Examination into Unum's unfair practices was "excessive reliance upon in-house medical professionals," who are paid by Unum and biased in favor of Unum. Multistate Examination Report at 6.

64.     Continuing that unfair practice here, Unum relied on three in-house physicians in considering Dr. Harper's claim.

13

65. None of Unum's in-house physicians examined Dr. Harper or asked to do so.

66. None of Unum's in-house physicians had a specialty in one of the fields of medicine involved, neurology and neurosurgery, as did Dr. Harper's treating physicians, Dr. Keating (neurology) and Dr. Standefer (neurosurgery).

67. Unum's first in-house physician, Jerry Beavers, M.D., who wrote the first report on which Unum relied, was located in Massachusetts and had certifications in occupational medicine and internal medicine, but not neurology or neurosurgery. 534, 596, 619, 820 & 851.

68. Unum's second in-house physician, Frank Kanovsky, M.D., who wrote the second report on which Unum relied, was located in California and had a certification in orthopaedic surgery, but not neurology or neurosurgery. 648 & 820.

69. Unum's third in-house physician, Robert Keller, M.D., who wrote the third report on which Unum relied, was located in Maine and had a certification in orthopaedic surgery, but not neurology or neurosurgery. 801.

### F.     No Independent Medical Examination[4]

70. One of the changes to Claim Organization and Procedures that Unum agreed to as part of the Multistate Examination was "[i]ncreased utilization of IME's." Multistate Examination Report at 12; *see also* Multistate Regulatory Settlement Agreement (expounding).

---

[4] This does not justify a post-complaint examination of Dr. Harper by the defendants because Dr. Harper's breach of contract and bad faith causes of action are now complete, and Unum cannot save itself by post-complaint conduct.

71.     Failing to abide by those changes here, Unum did not have Dr. Harper examined by a medical professional, even after Dr. Harper inquired about such an examination.

72.     On 07/29/2014, Unum wrote in its claim file "I told him regarding his comment about not having him examined, I stated this would not add value to the issue at hand.  If someone examined him today, they cannot tell us what the causes of his current restrictions and limitations are."  Claim File at 843.

73.     Inconsistently therewith, Unum provided post-injury information in forms and medical records to its three in-house physicians and asked them to opine in part therefrom on the causation of Dr. Harper's disability.

### G.     Failure to Follow Policy Language

74.     Some of the changes to Claim Organization and Procedures that Unum agreed to during the Multistate Examination were "[i]ncreased emphasis upon claim staff accountability for compliance with the terms of insurance policies and applicable law" and increased training of claim staff in regard thereto.  Multistate Examination Report at 12-13; *see also* Multistate Regulatory Settlement Agreement (expounding).

75.     Failing to abide by those changes here, Unum applied requirements to Dr. Harper's claim for full benefits that do not exist in the policy language.

76.     The policy states "'Injury' means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force."  Claim File at 73.

77.     On 07/29/2014, Unum wrote in its claim file "Is it possible hitting your head exacerbated something that was already there?  yes it is and I am not doubting that.  But the question we ask ourselves is if the incident itself, separate from any other causes,

caused your impairments that prevent you from performing occupational duties." Claim File at 844. That is not a requirement for a claim under the policy's definition of "Injury," and Unum's imposition of the requirement materially altered the policy's terms to the disadvantage of Dr. Harper.

78.     The above is an example and not an exhaustive list.

### H.     Misleading Dr. Harper about ERISA

79.     As discussed above in Part V, B, Unum's historical unfair practices included misleading claimants into believing their claims were governed by ERISA, which is less favorable to claimants than state law.

80.     Continuing that unfair practice here, Unum repeatedly misrepresented to Dr. Harper that his claim was governed by ERISA.

81.     "A plan that covers only the owner (and spouse) and no other employees is not governed by ERISA." American Bar Association Tort, Trial and Insurance Practice Section, ERISA Survey of Federal Circuits, Chapter 8 (Eighth Circuit), 2012 ed. at 290 (citing 29 C.F.R. § 2510.3-3(b)).

82.     The policy issued by Revere to Dr. Harper was an individual policy that covered only Dr. Harper and no others and was therefore not governed by ERISA, and this was apparent to Unum.

83.     Despite the above, Unum produced a Policy Coverage Summary with two fields marked "ERISA Indicators," consisting of several check-marked boxes, misleadingly indicating that ERISA governs Dr. Harper's policy even though it does not. Claim File at 433.

84.     On 11/04/2013, Unum wrote in its claim file "The (I) [insured] reports on his business returns 'P.A.' as a Professional Association for liability protection of a business corporation. Therefore, I believe ERISA applies." Claim File at 11 & 640. That was contrary to the law and misleadingly indicated that ERISA governed the policy.

85.     On 11/13/2013, Unum wrote in its claim file "Please review 'Note to File' (11/4/13) [the paragraph above] concerning my discussion with QCC [Quality Control Compliance department] related to the ERISA applicability. The policy was not issued as part of an association. ERISA remains applicable as an ESP group number exited at the time of effective date." Claim file at 669. That was contrary to the law and misleadingly indicated that ERISA governed the policy.

86.     On 12/03/2013, Unum wrote in a letter to Dr. Harper "You will have the right to have a court review the appeal determination by bringing a civil action under ... (ERISA)." Claim File at 681. That was a misstatement of the law and misleadingly indicated to Dr. Harper that ERISA governed the policy.

87.     On 08/01/2014, Dr. Harper wrote in an email to Stephens Insurance, his insurance agent, "My question is: Am I under the rules and regulations of ERISA? I don't think so since my policy was a private policy." Stephens Insurance replied "Your policy is an ERISA plan and 502(a) will apply. I asked for a second opinion from UNUM and our general counsel." That was a misstatement of the law, traceable to Unum, and misleadingly indicated that ERISA governed the policy.

88.     On 08/05/2014, Dr. Harper sent another email to Stephens Insurance asking "Any news on the ERISA question?" Stephens Insurance replied "My statement below [above here] was not well worded. I had already received confirmation from

17

Patrick McAlpine and UNUM that 501(2) [part of ERISA] will apply when I sent the email below." That was a misstatement of the law, traceable to Unum, and misleadingly indicated that ERISA governed the policy.

89. On 08/29/2014, Stephens Insurance sent a letter to Unum asking Unum to clarify its position on why Dr. Harper's appeal rights were governed by ERISA. Claim File at 858.

90. On 10/07/2014, Unum wrote in response to the above letter from Stephens Insurance that "Individual Disability *can be* governed by ERISA," that "when certain indicators are present, we are required to assert ERISA," that "there were enough indicators to assert ERISA may have governed your claim," but finally conceding "it does not appear your policy was part of an employee welfare benefit plan governed by ERISA." Claim File at 888 (emphasis original). That, with the exception of the concession, was a misstatement of the law and misleadingly indicated that Unum had a basis for incorrectly asserting that ERISA governed the policy.

## VII.    Causes of Action

### A.    Breach of Contract

91. All allegations herein are incorporated in this part.

92. Dr. Harper and Unum entered into a contract, which was a disability income insurance policy. Exhibit 1 (Claim File at 63-131).

93. The policy required Unum to pay full disability benefits to Dr. Harper, if he became disabled under the terms of the policy, of $15,000 per month (with COLA increase) from Dr. Harper's 65th birthday to the end of Dr. Harper's life. Claim File at 679, 682 & 868.

94.     Dr. Harper did what the contract required of him by paying premiums for 21 years, submitting information in support of his claim, and complying with all policy terms.

95.     Unum did not do what the policy required of it because Unum decided, contrary to the terms of the policy and the evidence, that Dr. Harper's disability was not due to an injury and that it therefore would only pay him the full benefit amount reduced by a factor of .6, which would be $9,000 per month (after COLA increase) from Dr. Harper's 65th birthday to the end of Dr. Harper's life.

96.     "'Positive notice of intended breach of contract to be performed in the future may be treated by the adverse party as actual breach.'" *DeLukie v. American Petroleum Co.*, 170 Ark. 453, 461 (1926) (citation omitted).

97.     Unum therefore breached the policy.

### B.     Breach of Contract due to Ambiguity

98.     All allegations herein are incorporated in this part.

99.     "[I]f the language [in an insurance policy] is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer." *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297 (2001) (citation omitted).   "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Id.* (citations omitted).

100.    The rules and regulations of the Arkansas Insurance Department state "No insurer shall deny a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to such provision, condition, or exclusion is included in the denial." Rule & Regulation 43, § 9.

19

101.    ERISA's regulations, which Unum asserted (albeit incorrectly) governed the policy, similarly state that any adverse benefit determination shall set forth "[r]eference to the specific plan provisions on which the determination is based." 25 C.F.R. § 2560.503-1(g)(1)(i).

102.    In violation of the above requirements, Unum did not include, in either the 12/03/2013 letter denying Dr. Harper's claim for full benefits or the 07/21/2014 letter denying his appeal, reference to any language in the policy reducing the amount of the full benefit payable to Dr. Harper in the event of disability due to sickness rather than injury. Claim File at 677 & 818.

103.    Thereafter, on 10/02/2014, Unum belatedly wrote in a letter to Dr. Harper that his benefits were reduced by this language in Unum's policy:

LIFETIME TOTAL DISABILITY BENEFIT RIDER

. . .

This benefit will start to pay on the later of:  (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends.  We will pay it while You remain Totally Disabled for as long as You live.

FOR INJURY

For Total Disability due to Injury, the monthly amount We will pay will be the amount shown on the Policy Schedule.  Any Cost of Living benefit rider added to Your Policy shall apply to this amount.

FOR SICKNESS

For Total Disability due to Sickness, the monthly amount We will pay will be based on the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your policy shall apply to this amount. *The amount shown on the Policy Schedule plus any Cost of Living increase that applies to this rider shall be multiplied by a factor. The factor to be used will be based on*

20

*Your age at the start of Total Disability which continues until age 65.*

Factors by age for Total Disability due to Sickness

| | |
|---|---|
| 1.0 for 55 or less | .5 for 60 |
| .9 for 56 | .4 for 61 |
| .8 for 57 | .3 for 62 |
| .7 for 58 | .2 for 63 |
| *.6 for 59* | .1 for 64 |

*If a larger amount is payable under this Policy for the same period, the larger benefit will be payable in lieu of this benefit.*

Claim File at 89 (emphasis added).

104.    Dr. Harper was age 59 when he became disabled, and Unum used the factor of *.6* to calculate (*i.e.*, reduce) his benefits.

105.    Aside from Unum citing the above-italicized language belatedly under the law, there is doubt or uncertainty as to the meaning of the above-italicized language, and it is fairly susceptible to more than one reasonable interpretation, in which case this court must construe the policy liberally in favor of Dr. Harper and strictly against Unum.

106.    The above-italicized language does ***not actually state*** that Unum will pay a benefit less than the amount shown on the Policy Schedule and COLA rider (*i.e.*, that it will pay $9,000 per month instead of $15,000 per month), and this ambiguity prevents the language from being applied to reduce that amount.

107.    Moreover, the above-italicized language is fairly susceptible to the reasonable interpretation that the factor will be used to ***increase***, rather reduce, the amount shown on the Policy Schedule and COLA rider, particularly when considering the last sentence: "If a larger amount is payable under this Policy for the same period, the ***larger benefit*** will be payable in lieu of this benefit." Claim File at 89 (emphasis added).

A reasonable interpretation of the policy language is that Unum will pay to Dr. Harper the full monthly benefit of $15,000 plus that amount multiplied by a factor of .6 ($15,000 x. .6 = $9,000), totaling $24,000 ($15,000 + $9,000 = $24,000). Once again, this ambiguity prevents the language from being applied to reduce the benefit amount.

108.    Unum therefore breached the policy.

### C.    Bad Faith

109.    All allegations herein are incorporated in this part.

110.    "An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured." *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 429 (2002) (citation omitted).

111.    Unum affirmatively engaged in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to Dr. Harper by:

(1)    Repeatedly misrepresenting to Dr. Harper and others that the policy was governed by ERISA, which is less favorable to Dr. Harper, when it was apparent to Unum that the policy was instead governed by state law, which is more favorable to Dr. Harper. Unum did so even though the California Insurance Commissioner previously wrote in a published decision that this was one of 28 illegal practices by Unum and even though the Commissioner required Unum to pay over $8 million in penalties and cease those 28 illegal practices. See above parts V, B and VI, H (discussing same).

(2)    Overruling, without a reasonable basis, the conclusions of Dr. Harper's treating physicians that he was disabled by injury and not sickness.

Unum did so even though this was an identified area of concern during the Multistate Examination into Unum's unfair practices and even though Unum agreed to pay a $15 million fine and make changes to those practices in the Multistate Regulatory Settlement Agreement. See above parts V, C and VI, D (discussing same).

(3)     Relying instead exclusively on Unum's in-house physicians, who were paid by Unum and biased in favor of Unum. Unum did so even though the in-house physicians did not examine Dr. Harper or request to do so. Unum did so even though the in-house physicians did not have specialties in the fields of medicine involved, neurology and neurosurgery, as did Dr. Harper's treating physicians. Unum did so even those this was an identified area of concern during the Multistate Examination into Unum's unfair practices and Unum agreed to also make changes to those practices in the Multistate Regulatory Settlement Agreement. See above parts V, C and VI, E (discussing same).

(4)     Failing to request or obtain an independent medical examination, even after Dr. Harper called Unum's attention to this failure. Unum did so even though this was an identified area of concern during the Multistate Examination into Unum's unfair practices and Unum agreed to also make changes to those practices in the Multistate Regulatory Settlement Agreement. See above parts V, C and VI, F (discussing same).

(5)     Failing to follow its policy language and instead applying requirements to Dr. Harper's claim for full benefits that do not exist in the policy language. Unum did so even though this was an identified area of concern during

the Multistate Examination into Unum's unfair practices and Unum agreed to also make changes to those practices in the Multistate Regulatory Settlement Agreement. See above parts V, C and VI, G (discussing same).

(6)   Otherwise affirmatively engaging in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to Dr. Harper.

112.   Unum therefore committed the tort of bad faith.

## VIII.   Damages

113.   Dr. Harper is entitled, while he remains disabled, to full benefits under the policy of $15,000 per month from age 65 to the end of his life.

114.   Dr. Harper is entitled to a penalty of 12% damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss, pursuant to Ark. Code Ann. § 23-79-208.

115.   Dr. Harper is entitled to prejudgment interest from the date of the loss forward. *Wooten v. McClenden,* 272 Ark. 61, 62 (1981).

116.   Unum knew or ought to have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage, and Unum continued such conduct in reckless disregard of the consequences, from which malice may be inferred, and for which punitive damages should be awarded.

117.   Dr. Harper prays for a recovery in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

## IX.   Declaratory Relief

118.   Pursuant to the Declaratory Judgments Act ("Act"), as adopted in Arkansas, "[a]ny person interested under a ... written contract ... or whose rights, status,

or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the contract ... and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104. The purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to the rights, status, and other legal relations." Ark. Code Ann. § 16-111-102(b). The Act "is to be liberally construed and administered." Ark. Code Ann. § 16-111-102(c). The procedure for obtaining a declaratory judgment shall be in accordance with the Arkansas Rules of Civil Procedure. Ark. R. Civ. P. 57.

119.    Pursuant to the Act, Dr. Harper is a "person interested" under the policy issued and administered by Unum because Dr. Harper stands to be compensated under the policy for the damages alleged herein.

120.    Dr. Harper seeks a declaration that he is entitled, while he remains disabled, to full benefits under the policy of $15,000 per month from age 65 to the end of his life, and that Unum shall pay those benefits.

## X.    Jury Trial

121.    Dr. Harper demands a trial by jury of any issue triable of right by a jury.

## XI.    Prayer for Relief

WHEREFORE, Dr. Harper prays that the court enter judgment, in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases, in his favor and against the defendants, for all damages and declaratory relief to which he is entitled, punitive damages, attorney fees, penalties, costs, prejudgment interest, and all other relief to which he is entitled.

25

Respectfully submitted,

Neil Chamberlin, #93222
Will Bond, #95145
MCMATH WOODS, P.A.
711 West Third Street
Little Rock, AR 72201
Telephone 501-374-5411
Facsimile 501-374-5118
neil@mcmathlaw.com
will@mcmathlaw.com

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.          Page 15 of 52(C)



COPY

# THE PAUL REVERE
## LIFE INSURANCE COMPANY

**18 CHESTNUT STREET
WORCESTER, MASSACHUSETTS 01608**

The Paul Revere Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of this Policy.

Insured     **DAVID M HARPER DDS**

Policy Number    **0102590863   JAN 09, 1993**     Date of Issue

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit with a limited benefit period while You are actively and regularly employed full time.  There is no age limit.  This option is explained in PART 7.

When You are no longer actively and regularly employed after age 65, You may continue Your Policy for the rest of Your life. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under the Policy. This option is explained in PART 8.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for The Paul Revere Life Insurance Company.

Secretary                    President and CEO

CHARTERED IN MASSACHUSETTS

**EXHIBIT**

DISABILITY INCOME POLICY
THE PREFERRED PROFESSIONAL
Claimant Name: David M Harper     Claim #:  9002898

**63**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029271103E.     Page 16 of 52(C)

## TABLE OF CONTENTS

| | Page |
|---|---|
| Renewal Provisions | 1 |
| Policy Schedule | 3 |
| Automatic Increase Benefit | 3 |
| Part 1 —— Definitions | 6 |
| Part 2 —— Benefits | 8 |
|     Total Disability Benefit | |
|     Residual Disability Benefit | |
|     Recovery Benefit | |
|     Presumptive Total Disability Benefit | |
|     Cosmetic or Transplant Surgery | |
|     Rehabilitation | |
|     Survivor Benefit | |
| Part 3 —— Exclusions | 11 |
| Part 4 —— Premium and Reinstatement | 12 |
| Part 5 —— Waiver of Premium | 13 |
| Part 6 —— Recurrent and Concurrent Disability | 13 |
| Part 7 —— Renewal Option After Age 65 | 14 |
|     If Employed – Total Disability Benefit | |
| Part 8 —— Renewal Option After Age 65 | 15 |
|     If Not Employed – Hospital Confinement Indemnity | |
| Part 9 —— Claims | 16 |
| Part 10 ——General Provisions | 17 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of the Policy.

COPY

DISABILITY INCOME POLICY
THE PREFERRED PROFESSIONAL

81-1

*Claimant Name: David M Harper     Claim #: 9002898*

**64**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.          Page 17 of 52(C)

## POLICY SCHEDULE

POLICY NUMBER:  0102590863                DATE OF ISSUE:  JAN 09, 1993

INSURED:      DAVID M HARPER DDS          COPY

POLICY OWNER:   THE INSURED

*****************************************************************

### SUMMARY OF PREMIUM   PREFERRED NONSMOKER

| | |
|---|---|
| ANNUAL PREMIUM FOR DISABILITY BENEFITS | $3,976.00 |
| ANNUAL PREMIUM FOR ADDITIONAL BENEFITS | $1,873.00 |
| TOTAL ANNUAL PREMIUM | $5,849.00 |
| *SELECT 15 ANNUAL PREMIUM | $4,971.65 |
| YOUR MONTHLY PREMIUM | $429.90 |
| EMPLOYEE SECURITY PLAN | |

*YOU HAVE A SELECT PREMIUM AS INDICATED.
THIS PREMIUM WILL REMAIN IN EFFECT UNTIL YOUR 65TH BIRTHDAY.  IT IS
SUBJECT TO CHANGE IF YOU RENEW YOUR POLICY AFTER YOUR 65TH BIRTHDAY.

*****************************************************************

### TABLE OF DISABILITY BENEFITS

| FROM INJURY OR FROM SICKNESS | COMMENCEMENT DATE | MAXIMUM MONTHLY AMOUNT | MAXIMUM BENEFIT PERIOD* |
|---|---|---|---|
| | 91ST DAY | $10,000.00 | TO AGE 65 |

QUALIFICATION PERIOD FOR RESIDUAL DISABILITY:   0 DAYS
*THE MAXIMUM BENEFIT PERIOD MAY CHANGE DUE TO YOUR AGE AT TOTAL DISABILITY.
PLEASE SEE POLICY SCHEDULE II.
*****************************************************************

### MODIFICATION OF COVERAGE

NONE.

*****************************************************************

990          PREFERRED PROFESSIONAL DISABILITY INCOME POLICY          91-1

*Claimant Name: David M Harper*      *Claim #:  9002898*

**65**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 201307291540Z927103E.          Page 18 of 52(C)

*Claimant Name: David M Harper     Claim #:  9002898*

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029Z7103E.        Page 19 of 52(C)

## POLICY SCHEDULE

POLICY NUMBER:   0102590863                    DATE OF ISSUE:   JAN 09, 1993

INSURED:         DAVID M HARPER DDS            COPY

POLICY OWNER:    THE INSURED

**************************************************************************

### TABLE OF ADDITIONAL BENEFITS

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFIT | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 65 |
|---|---|---|---|
| LIFETIME TOTAL DISABILITY (858) | $10,000.00 PER MONTH | LIFETIME | $795.00 |
| COST OF LIVING (1104) | 4% – CPI – 4% | -- | $705.00 |
| TOTAL DISABILITY IN YOUR OCCUPATION | -- | -- | $373.00 |

*Claimant Name: David M Harper*     *Claim #:  9002898*

**67**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.     Page 20 of 52(C)

*Claimant Name: David M Harper*     *Claim #:   9002898*

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 201307291540292710E.          Page 21 of 52(C)

POLICY SCHEDULE II

POLICY NUMBER:    0102590863              DATE OF ISSUE:   JAN 09, 1993

INSURED:          DAVID M HARPER DDS      COPY

POLICY OWNER:     THE INSURED

***********************************************************************

MAXIMUM BENEFIT PERIODS

YOU HAVE A LIFETIME BENEFIT RIDER ADDED TO YOUR POLICY WHICH PROVIDES A
BENEFIT FOR AS LONG AS YOU LIVE.  PLEASE REFER TO YOUR POLICY FOR DETAILS.

FOR TOTAL DISABILITY BENEFITS PAYABLE TO AGE 65, IF TOTAL DISABILITY BEGINS:

| | |
|---|---|
| BEFORE AGE 61 | TO AGE 65 |
| AT AGE 61 BUT BEFORE AGE 62 | 48 MONTHS |
| AT AGE 62 BUT BEFORE AGE 63 | 42 MONTHS |
| AT AGE 63 BUT BEFORE AGE 64 | 36 MONTHS |
| AT AGE 64 BUT BEFORE AGE 65 | 30 MONTHS |
| AT OR AFTER AGE 65 BUT BEFORE AGE 75 | 24 MONTHS |
| AT OR AFTER AGE 75 | 12 MONTHS |

*Claimant Name: David M Harper      Claim #: 9002898*

**69**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from CJPlumb@UNUM.COM) Req ID 20130729154029Z7103E.          Page 22 of 52(C)

Claimant Name: David M Harper          Claim #:   9002898

**70**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from ()Plumb@UNUM.COM) Req ID 20130729154029271103E.          Page 23 of 52(C)

POLICY SCHEDULE III

POLICY NUMBER:   0102590863                  DATE OF ISSUE:   JAN 09, 1993

INSURED:          DAVID M HARPER DDS         COPY

POLICY OWNER:     THE INSURED

**************************************************************************

AUTOMATIC INCREASES

$500 WILL BE AUTOMATICALLY ADDED TO YOUR MONTHLY TOTAL DISABILITY BENEFIT
WITHOUT EVIDENCE OF INSURABILITY.  THIS WILL BE DONE ON EACH INCREASE DATE.

THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.
THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY
ARE LISTED BELOW.

| INCREASE DATE | MONTHLY BENEFIT INCREASE | ANNUAL PREMIUM INCREASE |
|---------------|--------------------------|-------------------------|
| JAN 09, 1994  | $500.00                  | $256.23                 |
| JAN 09, 1995  | $500.00                  | $271.75                 |
| JAN 09, 1996  | $500.00                  | $286.92                 |
| JAN 09, 1997  | $500.00                  | $302.77                 |
| JAN 09, 1998  | $500.00                  | $317.90                 |
| TOTAL INCREASE | $2,500.00               | $1,435.57               |

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE
INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY.
SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR
THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE
DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME
PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM
FOR THE INCREASE.

YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE
INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING
AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE
INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.

PRIOR TO YOUR 60TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC
INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD
OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE SHOWN ABOVE.
APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

*Claimant Name: David M Harper      Claim #:  9002898*

**71**

Fax to 5524794 (HAV_WDRC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029271103E.     Page 24 of 52(C)

*Claimant Name: David M Harper     Claim #:   9002898*

**72**

Fax to 5624794 (NAV_WQRC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029271035.          Page 25 of 52(C)

## PART 1
## DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY. REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1   "Policy" means the legal contract between You and Us. The policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

1.2   "You" and "Your" refer to the insured named in the Policy Schedule.

1.3   "We", "Us" and "Our" refer to The Paul Revere Life Insurance Company. Our Home Office is 18 Chestnut Street, Worcester, Massachusetts, 01608.

1.4   "Date of Issue" means the date that the Policy becomes effective. It is shown on the Policy Schedule.

1.5   "Injury" means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

1.6   "Sickness" means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force. It includes Disability due to complications of pregnancy or childbirth. It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

1.7   "Physician" means any licensed practitioner of the healing arts practicing within the scope of his or her license. A Physician must be a person other than You.

1.8   "Physician's Care" means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability.

1.9   "Your Occupation" means the occupation or occupations in which You are regularly engaged at the time Disability begins.

1.10   "Total Disability" means that because of Injury or Sickness:

a.   You are unable to perform the important duties of Your Occupation; and
b.   You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

1.11   "Residual Disability", prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:

a.   (1)  You are unable to perform one or more of the important duties of Your Occupation; or
       (2)  You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
b.   You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
c.   You are not Totally Disabled.

COPY

*Claimant Name: David M Harper     Claim #:  9002898*

**73**

As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:

   a.   You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation; and

   b.   You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and

   c.   You are not Totally Disabled.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

1.12   "Recovery" means a period which begins prior to age 65 during which:

   a.   You incur a Loss of Earnings which follows Total or Residual Disability which continued at least to the Commencement Date; and

   b.   The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and

   c.   You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

1.13   "Disability" or "Disabled" refers to a continuing period of Total and/or Residual Disability. For a Maximum Benefit Period "To Age 65" or "Lifetime", successive periods will be deemed to be continuing if:

   a.   Due to the same or related causes; and

   b.   Separated by no more than 12 months.

For all other Maximum Benefit Periods, successive periods will be deemed to be continuing if:

   a.   Due to the same or related causes; and

   b.   Separated by no more than 6 months.

Otherwise such periods will be deemed to be new and separate Disabilities. The Maximum Benefit Period is shown on the Policy Schedule.

1.14   "Commencement Date" is the day shown on the Policy Schedule when benefits begin during a Disability.

1.15   "Maximum Benefit Period" is the longest period of time for which We will pay benefits during any Disability. It is shown on the Policy Schedule.

We will not pay Residual Disability or Recovery benefits beyond the later of:

   a.   Your 65th birthday; or

   b.   The date on which 24 months of Disability benefits have been paid.

COPY

*Claimant Name: David M Harper*    *Claim #:  9002898*

**74**

## PART 2
## BENEFITS

The monthly benefits payable under this Policy are subject to the terms of Part 8 "Claims".

### 2.1    TOTAL DISABILITY BENEFIT

*What is the Total Disability benefit?*

We will periodically pay a Total Disability benefit during Your Total Disability. The monthly amount We will pay is the Maximum Monthly Amount.  It is shown on the Policy Schedule.

This benefit will begin on the Commencement Date. We will continue to pay it while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Total Disability.

### 2.2    RESIDUAL DISABILITY BENEFIT

*When is the Residual Disability benefit payable?*

We will periodically pay a Residual Disability benefit during Your Residual Disability.

The monthly amount We will pay equals:

*How is the Residual Disability benefit calculated?*

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \quad X \quad \text{Maximum Monthly Amount}$$

During any Disability each of the first 6 monthly payments of this benefit will not be less than 50% of the Maximum Monthly Amount.

The benefit will begin on either the Commencement Date or the day after Your Total Disability ends, if later. We will pay this benefit while Your Residule Disability continues, but not beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Residual Disability.

"Loss of Earnings" for any month means Your Prior Earnings minus Your Monthly Earnings for the month for which a benefit is claimed.  This difference will be considered Loss of Earnings to the extent it is due to the Injury or Sickness which caused the Disability. The Loss of Earnings must be at least 20% of Prior Earnings.

If the Loss of Earnings for any month is 75% or more of Prior Earnings, We will deem the loss to be 100% of Prior Earnings.

"Prior Earnings" means the greater of:

      a.  Your average Monthly Earnings for the year just before Your Disability began; or
      b.  Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began.

Starting as of the first Review Date, We will make an Inflation adjustment to Your Prior Earnings.  We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable.  However, the Inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

The Inflation adjustment will not apply once the Disability ends.  But it will apply to recurrent Disability deemed continuing under the Recurrent Disability section of Your Policy.

COPY

*Claimant Name: David M Harper        Claim #:   9002898*

**75**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029271036.        Page 28 of 52(C)

"CPI" means the Consumer Price Index for All Urban Consumers. It is pub-
lished by the United States Department of Labor. If this index is discontinued
or if the method for computing it is materially changed, We may choose an-
other index. We will choose an index which in Our opinion would most ac-
curately reflect the rate of change in the cost of living in the United States.
CPI will then mean the index We chose.

"Review Date" means the date that occurs:

      a.   After each successive 12 months of Disability; and
      b.   While Your Disability continues.

No Review Date will occur on or after Your 65th birthday.

"Index Month" means the calendar month four months prior to the calendar
month in which a Review Date occurs. But the first Index Month for any Dis-
ability will be the calendar month 4 months prior to the month in which Your
Disability began.

"CPI Change" means the result of a computation We will make as of each
Review Date. We will divide the CPI for the most recent Index Month by the
CPI for the Index Month prior to the most recent Index Month.

"CPI Factor" means the result of the CPI Change as of the current Review
Date multiplied by the CPI Change for each prior Review Date occurring since
the Disability began. The CPI Factor as of the first Review Date will equal the
CPI Change as of that Review Date. A CPI Factor is determined as of each
Review Date while Disability continues.

"Monthly Earnings" means Your salary, wages, commissions, bonuses, fees,
and income earned for services performed. If You own any portion of a
business or profession, it means:

      a.   Your share of the income earned by that business or profes-
           sion;
      b.   Less Your share of business expenses which are deductible for
           Federal income tax purposes;
      c.   Plus Your salary and any contributions to a pension or profit
           sharing plan made on Your behalf.

Monthly Earnings does not include:

      a.   Income from deferred compensation plans, disability income
           policies, or retirement plans; or
      b.   Income not derived from Your vocational activities.

We will allow either the cash or accrual accounting method. But during a
Disability the same method must be used when determining Loss of Earnings.

COPY

*Claimant Name: David M Harper        Claim #: 9002898*

**76**

### 2.3   RECOVERY BENEFIT

We will periodically pay a Recovery benefit during Your Recovery.   The monthly amount We pay will be calculated as if You were Residually Disabled.

This benefit will begin on the day after Your Total or Residual Disability ends. We will continue to pay this benefit while Your Recovery continues. We will not pay beyond the end of the Maximum Benefit Period.

*Can benefits be paid if not Disabled?*

### 2.4   PRESUMPTIVE TOTAL DISABILITY BENEFIT

If Injury or Sickness causes You to totally and irrecoverably lose: .

- a.   Your power of speech; or
- b.   Your hearing in both ears; or
- c.   Your sight in both eyes; or
- d.   Use of both hands; or
- e.   Use of both feet; or
- f.   Use of one hand and one foot;

We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care.

The Total Disability benefit will begin on the date of the above loss. We will pay it for the amount and Maximum Benefit Periods shown on the Policy Schedule. But We will pay benefits for Your lifetime if; a) the Maximum Benefit Period is "to age 65" or "lifetime"; and b) such loss occurs prior to age 65.

*Can Total Disability be automatically assumed?*

### 2.5   TOTAL DISABILITY BECAUSE OF COSMETIC OR TRANSPLANT SURGERY

After 6 months from the Date of Issue, if You become Totally Disabled because You have surgery to:

- a.   Improve Your appearance or prevent disfigurement; or
- b.   Transplant part of Your body to someone else;

We will consider You to be Totally Disabled due to Sickness.

*Is cosmetic or transplant surgery covered?*

COPY

*Claimant Name: David M Harper      Claim #:   9002898*

**77**

## 2.6    REHABILITATION

We will pay for the cost of services incurred in connection with a program of vocational rehabilitation if:

*What happens if a program of retraining or rehabilitation is entered?*

    a.   We enter into an agreement with You on both the program and the services; and

    b.   The cost of the services is not covered by another plan or program.

Participating in such a program will not affect Your eligibility for benefits under Your Policy.

## 2.7    SURVIVOR BENEFIT

*Is there a benefit if You die?*

If You die after the Commencement Date and prior to age 65, and while You are eligible for Total Disability benefits, We will pay to Your beneficiary 3 times the Maximum Monthly Amount payable at the time You die. Your beneficiary will be Your estate. But You may name someone else by writing to Us.

# PART 3
# EXCLUSIONS

## 3.1    EXCLUSIONS

*When are you not covered?*

We will not pay Policy benefits:

    a.   Due to an act or accident of war, whether declared or undeclared; or

    b.   Due to normal pregnancy or childbirth except as described in the definition of Sickness; or

    c.   For any period You are incarcerated.

## 3.2    PRE-EXISTING CONDITION

*What if a disability results from a Pre-existing Condition?*

We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application. Pre-Existing Condition means a sickness or physical condition for which symptoms existed prior to the Date of Issue that would cause an ordinarily prudent person to:

    a.   Seek diagnosis, care, or treatment within a five-year period prior to the Date of Issue; or

    b.   For which medical advice or treatment was recommended by or received from a physician within a five-year period prior to the Date of Issue.

Also We will not pay benefits for any loss We have excluded by name or specific description.

COPY

*Claimant Name:  David M Harper        Claim #:   9002898*

**78**

# PART 4
## PREMIUM AND REINSTATEMENT

### 4.1   PAYMENT OF PREMIUM

The first premium on Your Policy is payable on the Date of Issue. After that, premiums are payable in the amount and mode shown on the Policy Schedule. Payments may be made at Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or to Our agent.

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But, We will not allow a change while You are Disabled.

*When are premiums due?*

### 4.2   GRACE PERIOD

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium. Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

*What happens if a premium payment is late?*

### 4.3   REINSTATEMENT

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application. We will issue You a conditional receipt for the premium. If We approve Your application, the Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.  The reinstated Policy will cover only loss due to:

   a.  Injury sustained after the date of reinstatement; or
   b.  Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

*How can a lapsed Policy be reinstated?*

### 4.4   PREMIUM REFUND

If You cancel this Policy We will refund any premium paid for a period beyond the month of cancellation.

Upon notice of Your death, We will make a pro rata refund of any premium actually paid for a period beyond the month of Your death.

*Is there any premium refund?*

COPY

*Claimant Name: David M Harper*      *Claim #:   9002898*

**79**

## PART 5
## WAIVER OF PREMIUM

**5.1    WAIVER OF PREMIUM**

*When will premiums be waived?*

After You have been Disabled for 90 days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium paid that became due during those first 90 days of Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Waiver of Premium will not apply to any premiums which become due after You elect the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINE-MENT INDEMNITY BENEFIT in PART 8.

## PART 6
## RECURRENT AND CONCURRENT DISABILITY

**6.1    RECURRENT DISABILITY**

a.  For Maximum Benefit Periods "To Age 65" and "Lifetime":

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within 12 months of the end of the prior period, We will deem it a continuation of the prior Disability.

*What if a disability reoccurs?*

Such periods of Recurrent Disability separated by 12 months or less will be deemed to be continuing in order to determine the Commencement Date. Such periods of Recurrent Total Disability separated by 12 months or less will be deemed to be continuing in order to determine completion of the Qualification Period, if any.

b.  For All Other Maximum Benefit Periods:

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within 6 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Recurrent Disability separated by 6 months or less will be deemed to be continuing in order to determine the Commencement Date. Such periods of Recurrent Total Disability separated by 6 months or less will be deemed to be continuing in order to determine completion of the Qualification Period, if any.

**6.2    CONCURRENT DISABILITY**

*What if a disability is due to more than one cause?*

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

We will not pay more than one Disability benefit for the same period. We will always pay the largest benefit.

COPY

990                                           -13-

*Claimant Name: David M Harper        Claim #:  9002898*

**80**

## PART 7
### RENEWAL OPTION IF EMPLOYED, TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD

**7.1   RENEWAL OPTION**

After Your 65th birthday You may continue Your Policy for the Total Disability benefit while:

    a.   You remain actively and regularly employed full time for at least 30 hours per week; and
    b.   The premium is paid on time.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

You cannot elect this option after the RENEWAL OPTION IF NOT EMPLOYED, HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8 becomes effective.

The Policy must be in force when You elect this option.

**7.2   TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD**

If You elect this option, We will pay the Total Disability amount subject to the same provisions, exceptions, and limitations in the Policy.

For Total Disability starting:

a.   After Your 65th birthday, but before Your 75th birthday, the Maximum Benefit Period will be 24 months or the period shown on the Policy Schedule if less; and
b.   After Your 75th birthday, the Maximum Benefit Period will be 12 months.

**7.3   PREMIUMS**

The premium will be the rate then in effect for Your rating group.  We can change the premium rate but only if We change the rate for everyone who has this policy form in Your rating group in Your state.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option will be returned to You. Or at Your request, We will apply it to the premium payable under the RENEWAL OPTION IF NOT EMPLOYED, HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8.

*Can the Policy be renewed after age 65 if You are still working?*

*How will the benefit period be limited?*

*What will the premium be?*

COPY

*Claimant Name: David M Harper        Claim #:  9002898*

**81**

## PART 8
## RENEWAL OPTION IF NOT EMPLOYED.
## HOSPITAL CONFINEMENT INDEMNITY BENEFIT

**8.1    RENEWAL OPTION**

*Can the Policy be renewed after age 65 if not working?*

When You are no longer actively and regularly employed after Your 65th birthday You may continue Your Policy for the rest of Your life, as long as the premium is paid on time. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under Your Policy and, unless We state otherwise, any benefits under riders added to the Policy.

The Policy must be in force when You elect this option.

**8.2    HOSPITAL CONFINEMENT INDEMNITY BENEFIT**

*What will the benefit be?*

If You elect this option, We will pay You a Hospital Confinement Indemnity of 100 dollars per day while You are confined in a legally operated hospital because of Injury or Sickness.

This benefit will begin on the date You are confined. We will continue to pay it while You are confined. But We will not pay for more than 9 months during each continuous confinement.

For the purpose of this benefit, after a period of confinement ends and You are confined again from the same or related cause within 180 days, We will consider it to be a continuation of the first confinement.

For the purpose of this benefit, "hospital" will not mean:

   a.  A place of convalescence, nursing home care, or care for the aged; or
   b.  A place for the care or treatment of mental disorders, drug addiction, or alcoholism; or
   c.  A place that is used primarily for custodial, educational, or rehabilitative care.

**8.3    EXCEPTIONS**

*What other Policy provisions will change?*

Under this option, the Waiver of Premium, the Recurrent Disability, and Benefit provisions of the Policy will not apply. However, all of the other provisions, exceptions, and limitations in the Policy will apply.

**8.4    PREMIUMS**

*What will the premium be?*

The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has the policy form in Your rating group in Your state.

COPY

990

-15-

*Claimant Name: David M Harper      Claim #: 9002898*

**82**

# PART 9
# CLAIMS

## 9.1   TIME OF LOSS

All losses must occur while Your Policy is in force. But, termination of Your Policy will not affect any claim for Total Disability that begins within 30 days of the date of an injury causing such Disability.

*When must losses occur?*

## 9.2   WRITTEN NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608, or is given to Our agent.

*When must written notice be given?*

## 9.3   CLAIM FORMS

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

*Is there a form for proof of loss?*

## 9.4   WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year of the date it was required.

We can also require reasonable proof from You of Your:

a.   Prior Earnings; and
b.   Monthly Earnings for the month for which Disability is claimed.

This may include personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us or which We may require.  We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

*What types of proof of loss might be required?*

COPY

## 9.5   EXAMINATIONS

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is continuing.

*Can there be an independent exam performed?*

## 9.6   TIME OF PAYMENT OF CLAIMS

After We receive satisfactory written proof of loss:

a.   We will pay any benefits then due that are not payable periodically; and
b.   We will pay at the end of each 30 days any benefits due that are payable periodically — subject to continuing proof of loss.

*When will benefits be paid?*

*Claimant Name: David M Harper        Claim #:  9002898*

**83**

Fax to 5524794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.     Page 36 of 52(C)

**8.7   PAYMENT OF CLAIMS**

*To whom will benefits be paid?*

All benefits will be paid to the Policy Owner named on the Policy Schedule. If any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to 1,000 dollars to one of Your relatives who We believe is entitled to it.  If We do that in good faith, We will not be liable to anyone for the amount We pay.

*When must notice of an assignment be sent?*

**9.8   ASSIGNMENT**

We will not be bound by an assignment of Your Policy or any claim unless We receive a written assignment at Our Home Office before We pay the benefits claimed. We will not be responsible for the validity of any assignment. An absolute assignment is a change of Policy Owner to the assignee. A collateral assignment is not a change of Policy Owner; in this case benefits will be paid jointly to the Policy Owner and the assignee.

*What if there is a misstatement of age?*

**9.9   MISSTATEMENT OF AGE**

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

**PART 10**
**THE CONTRACT**

*Can the Policy be changed?*

**10.1   ENTIRE CONTRACT; CHANGES**

This Policy (with the application and attached papers) is the entire contract between You and Us.  No change in this Policy will be effective until approved by a Company officer.  This approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

*For how long is the Policy contestable?*

**10.2   INCONTESTABLE**

a.   After Your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application.

b.   No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue.

**10.3   CONFORMITY WITH STATE STATUTES**

*What if the Policy differs with state requirements?*

Any provision in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**10.4   LEGAL ACTION**

*When can legal action be brought under this Policy?*

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3 years from the date written proof of loss is required.

*Claimant Name: David M Harper       Claim #:  9002898*

**84**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from UPlumb@UNUM.COM) Req ID 20130729154029272103E.          Page 37 of 52(C)

## COST OF LIVING ADJUSTED BENEFIT RIDER —
## TOTAL OR RESIDUAL DISABILITY

### Adjustments Begin After the Twelfth Month of Disability

This rider provides a COLA Benefit to the Policy to which it is added.

**DEFINITIONS**

In this rider:

"CPI" means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

"Review Date" means the date that occurs:
1. After each successive twelve-month period of continuous Disability; and
2. While Your Disability continues.

No Review Date will occur beyond the later of:
1. Your 65th birthday; or
2. The second Review Date, if Your Disability begins after Your 63rd birthday.

"Review Period" means the twelve months of Disability ending just prior to each Review Date.

"Index Month" means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month four months prior to the month in which Your Disability began.

"COLA Factor" is used to determine the COLA benefit. It equals $\frac{A-B}{B}$.

"A" is the CPI for the most recent Index Month.
"B" is the CPI for the first Index Month.

A COLA Factor is determined as of each Review Date while Disability continues.

"Maximum Percentage" is 4%. You have the right to increase it to 10% as described in the Percentage Increase Option section below.

"Monthly Benefit for Total Disability" means the sum of the monthly amounts payable at a given time, for the Total Disability benefit. This includes any Supplemental Social Insurance Benefit rider that may be added to Your Policy.

These amounts are shown on Your Policy Schedule. This rider does not change them. They are the amounts to which this rider applies a cost of living adjustment.

COPY

H1104

87-6

*Claimant Name: David M Harper        Claim #:  9002898*

**COLA BENEFIT**

Starting as of the first Review Date, We will pay a COLA Benefit if You are Disabled. This benefit is added to Your other Policy benefits.

If You are Totally Disabled, this benefit is determined by multiplying the Monthly Benefit for Total Disability by the COLA Factor. But the COLA Benefit cannot:

1. Exceed the Monthly Benefit for Total Disability times a percentage factor equal to the completed number of Review Periods multiplied by the Maximum Percentage; or
2. Be less than the amount of the Monthly Benefit for Total Disability times a percentage factor equal to the completed number of Review Periods multiplied by 4%.

If You are Residually Disabled, the COLA Benefit will be determined as above except that We will use the Monthly Benefit for Residual Disability instead of the Monthly Benefit for Total Disability.

**BENEFIT PURCHASE OPTION**

You may purchase the COLA Benefit described above. This does not apply to Benefits provided under any Supplemental Social Insurance Benefit Rider that may be added to Your Policy.

This new Benefit will be added to Your coverage. It will apply only to new Disabilities which start after the effective date of the new Benefit.

The right to purchase this Benefit is subject to the following:

1. You have returned to gainful, full-time employment after the end of a period of Disability during which a COLA Benefit was paid; and
2. You have not attained age 60; and
3. You have requested this Benefit within 90 days from the end of the Disability for which You received the COLA Benefit.

These are the only requirements.

The new Benefit will take effect within 31 days after We receive Your request.

The Premium for this new Benefit will be based on Your attained age. We will use the Premium rates then in effect. The additional Premium must be paid within 31 days of the effective date. Later premiums for this new benefit must be paid as part of the renewal Premiums for this Policy.

This new Benefit will not be paid if You are receiving benefits under the Recurrent Disability provisions of Your Policy.

If You do not purchase this Benefit, Your benefit amounts will revert to the original amounts for new periods of Disability.

**MAXIMUM PERCENTAGE INCREASE OPTION**

You have the right to increase the Maximum Percentage to 7% or 10%. You may do this, without submitting evidence of insurability, by following the rules set forth below.

COPY

You may increase the Maximum Percentage on the Option Dates of Your choice. Option Date means each anniversary of the Date of Issue of the Policy starting with the first and ending with the anniversary which falls on or next follows Your 60th birthday.

The request for an increase must be made within an Option Period. Option Period means the period which begins 60 days before and ends 31 days after an Option Date. The request must be a dated written request signed by You. An increase will be effective:  (a) on the Option Date if Your request is made before that date; or  (b) on the date of Your request if it is made within 31 days after the Option Date.

You can request an increase during any Option Period even if you are disabled, but the increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate Disability.

The first premium for an increase must be paid within 31 days after the effective date of the increase. Later premiums must be paid as part of the Policy Premium. If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

The premium for this rider will increase if You raise the Maximum Percentage. The added premium will be based on: a) the change in the Maximum Percentage; b) Your attained age; and c) Our premium rates then in effect at the time of the increase.

**EXPIRATION DATE FOR MAXIMUM PERCENTAGE INCREASE OPTION**

This Option will expire on the earlier of:  (a) the date when the Maximum Percentage is 10%; or  (b) the date when the last Option Period ends.

**GENERAL**

All provisions of Your Policy remain the same except where We change them by this rider.

This rider will end:

1. When the Policy ends; or
2. On Your 65th birthday,

whichever happens first.

The premium charge for this rider will end when this rider ends. The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary              President and CEO

COPY

*Claimant Name:  David M Harper      Claim #:  9002898*

**87**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from ()Plumb@UNUM.COM) Req ID 20130729154029271103E.          Page 40 of 52(C)

Claimant Name: David M Harper      Claim #:   9002898

**88**

## LIFETIME TOTAL DISABILITY BENEFIT RIDER

This rider provides a Lifetime Total Disability benefit.

**LIFETIME BENEFIT AFTER AGE 65**

We will pay this benefit during Your continuous Total Disability if:

1. The Total Disability begins before age 65; and
2. The Total Disability continues until age 65; and
3. The benefits under the Policy to which this rider is added have been paid during Your Total Disability.

This benefit will start to pay on the later of: (a) Your 65th birthday; or (b) the date the Total Disability benefit payable under Your Policy ends. We will pay it while You remain Totally Disabled for as long as You live.

### FOR INJURY

For Total Disability due to Injury, the monthly amount We will pay will be the amount shown on the Policy Schedule.  Any Cost of Living benefit rider added to Your Policy shall apply to this amount.

### FOR SICKNESS

For Total Disability due to Sickness, the monthly amount We will pay will be based on the amount shown on the Policy Schedule. Any Cost of Living benefit rider added to Your Policy shall apply to this amount. The amount shown on the Policy Schedule plus any Cost of Living increase that applies to this rider shall be multiplied by a factor. The factor to be used will be based on Your age at the start of Total Disability which continues until age 65.

#### Factors by age for Total Disability due to Sickness

| | |
|---|---|
| 1.0 for 55 or less | .5 for 60 |
| .9 for 56 | .4 for 61 |
| .8 for 57 | .3 for 62 |
| .7 for 58 | .2 for 63 |
| .6 for 59 | .1 for 64 |

If a larger amount is payable under this Policy for the same period, the larger benefit will be payable in lieu of this benefit.

### GENERAL

This rider will end:

1. At the same time the Policy ends; or
2. On Your 65th birthday.

whichever happens first.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

The annual premium for this rider is shown on the Policy Schedule.

The Date of Issue of this rider is the same as that of Your Policy. If We issued this rider after Your Policy, the Date of Issue is shown below.

Signed for Us at Worcester, Massachusetts.

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary                    President and CEO

COPY

H858                                                                88-9

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 201307291540292Z7103E.          Page 42 of 52(C)

*Claimant Name: David M Harper     Claim #:  9002898*

**90**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 20130729154029271036.                    Page 43 of 52(C)

**APPLICATION FOR
DISABILITY INSURANCE TO:**   THE PAUL REVERE LIFE
INSURANCE COMPANY   WORCESTER, MA 01608

№ 460754

| | |
|---|---|
| 1a. Name (Print): HARPER, D.D.S, M.S. DAVID M. <br> (incl. Prof. Title)  Last  First  MI | b. Soc. Sec. # 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 <br> c. Ht. 5' 11½"  d. Wt. 173 |

e. Sex M ☒ F ☐   f. Birthdate: 10-12-53   g. Age (nearest): 39   h. Birthplace (State) ARKANSAS

l. Residence Address: 10600 Sixin Oaks Rd, Ft. Smith,  AR  72903 (501)648-0946
                                      Street        Apt #    City      State    Zip      Phone

J. Business Address: 3015 Free Ferry Rd,  Ft. Smith  AR  72903 (501)782-0339
                                        Street        Apt #    City      State    Zip      Phone

2a. Occupation: ORTHODONTICS Specialist   b. Employer: David M. Harper, D.D.S, M.S. PA

c. Exact duties: ORTHODONTICS

d. Length of current employment: 10 yrs   e. Nature of Employer's business: Dentistry Specializing in orthodontics

f. If owner, percentage owned: 100   Length of Ownership: 7 yrs   # full time employees: 5

g. Type of Business Entity: Sole Proprietor ☐ Partnership ☐ Corporation ☐ Other ☒ describe: Professional Association

3. Have you within the past 2 years engaged in motorcycle riding, scuba diving, racing or any similar sport or avocation?
   Yes ☐ No ☒ If "yes" give details: _____

4. Have you smoked cigarettes in the past 12 months?                    Yes ☐ No ☒

5. Have you been actively at work full-time for the past 6 months?           Yes ☒ No ☐
   If "No" give details: _____

**Questions 6 and 7 need not be answered if a Paul Revere Medical Exam is required.**

6. Have you ever been treated for or had any known indication of: (Circle all conditions that apply and give details below)

   a. Chest pain, high blood pressure, mental or emotional disorder, arthritis, diabetes, cancer, tumor,
      or fainting spells?                                              Yes ☐ No ☒

   b. Disease or disorder of the heart or circulatory system, lungs, kidneys, bladder, genital or reproductive organs,
      brain or nervous system, skin, eyes, ears or speech?               Yes ☐ No ☒

   c. Disease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or neck?  Yes ☐ No ☒

   d. Complications of pregnancy? Yes ☐ No ☒ Are you currently pregnant? Yes ☐ No ☐ Due date: N/A

7. In the past 5 years, have you had any medical advice or operation, physical exam, treatment, illness, abnormality or injury
   not listed above? Yes ☐ No ☐   Are you currently receiving any medical advice or treatment? Yes ☐ No ☐

8. Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physi-
   cian, or been counseled or treated for excess use of alcohol or drugs?               Yes ☐ No ☒

9. Give details to all "Yes" answers to 6, 7 or 8. Include exact diagnoses, dates, duration, physicians and addresses.
   Hernia repair 1986, Dr. John Weisse, 5622 Rogers Ave, Fort Smith AR 72903
   Complete recovery
   _____
   _____          C O P Y
   _____

10. In the past 5 years have you had any insurance application rejected or modified or received or been refused any disability
    or medical benefits? Yes ☐ No ☒ If "yes" give details: _____

| | Estimated Current Annual Rate | Actual Last year 19 91 | Actual 2 Years Ago 19 90 |
|---|---|---|---|
| 11. Fill in amounts as Reportable for Federal Tax purposes | | | |
| a. Salary, Fees, Commissions & Bonus | $310,000. | $252,000 | $250,000 ± |
| b. Pension and Profit Sharing Contributions | 30,000 | | |
| c. Earnings from other occupations (describe): | | | |
| d. Total Earnings (a + b + c) | | | |
| e. Deductible Business Expenses | | | |
| f. NET EARNED INCOME (d – e) | 240,000 | 252,000 | 250,000 ± |

12. List Net worth (assets minus liabilities), if more than $750,000: $ 1,000,000 ±

13. List unearned income (interest, dividends, capital gains, rent, etc.), if more than $15,000 per year: $ 20,000 ±

App 64                                                                             86-4

*Claimant Name: David M Harper      Claim #:  9002898*

**91**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.          Page 44 of 52(C)

Claimant Name; David M Harper        Claim #:   9002898

**92**

14. Describe all disability coverage in force, and all coverage applied for in the past 12 months. Indicate if it is:
A) Individual, B) Social Security Substitute, C) Association, D) Group, E) Salary Continuation, F) Overhead Expense, or
G) Buy-Out. If none, write "none".

| Company or Source If Paul Revere, give Pol. # If pending, check ──→ | Type (A,B,C, etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Replaced/Changed or Madeover? | Effective Date of Discontinuance |
|---|---|---|---|---|---|---|
| CNA | A | 3500 | 90 Day | Age 65 | Yes ☒ No ☐ | |
| CNA | F | 1500 | 60day | 1 year | Yes ☒ No ☐ | |
| PR LTD 2000 | X D | $0,000. | 90 | 65 | Yes ☐ No ☒ | |
| PR | | | | | Yes ☐ No ☐ | |

15. Describe Coverage Being Requested (if BOE, complete supplement):

| Plan Code: 99D | Monthly Amt. | Elim. Period | Benefit Period | Form # | Optional Benefits Amount | Form # | Amount |
|---|---|---|---|---|---|---|---|
| Base | 10,000 | 90 | 65 | 1104 | 10,000 | | |
| AMI | | | | Can occ. | 10,000 | | |
| AMI | | | | PS8 | 10,000 | | |
| SSIB | | | | ATB | 5% | | |

16. a. Will requested coverage be paid for by employer? Yes ☒ No ☐ If "yes" how much?  150  %
Will employer's contribution be included in your taxable income? Yes ☐ No ☒
b. List name and address of proposed owner if other than proposed insured _____

c. Send notices to:     Residence ☐    Business ☒
d. Collected with this application in exchange for Conditional Receipt:  $  0

**CORRECTIONS AND AMENDMENTS (For Home Office Use Only)**

COPY

It is understood and agreed as follows:
(1) I have read the statements and answers recorded above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.
(2) I will permanently discontinue all policies shown to be discontinued in answer to question 14 on or before the dates indicated. If not, benefits under any policy issued on this application may be reduced by the amount payable under such existing policies.
(3) No agent or broker has authority to waive the answer to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy.
(4) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application. The only exception to this is the insurance provided in the Conditional Receipt detached herefrom and issued if at least the Minimum Deposit is made with the Application.
(5) Acceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes listed under "Corrections and Amendments".

Signed at  Fort Smith   Arkansas                         Date  11/16              19 92

                                                          X David M Harper
                                                          Signature of Proposed Insured

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

Witness  _____                        X _____
          Licensed Agent or Broker                        Signature of Proposed Owner (if applicable)

Applicants will be informed whether or not their application has been accepted
within 60 days or be given the reason for any further delay.

PAGE 2
*Claimant Name: David M Harper      Claim #:  9002898*

**93**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 201307291540292710E.          Page 46 of 52(C)

Claimant Name: David M Harper        Claim #:   9002898

94

MEDICAL APPLICATION                                                      WORCESTER, MA 01608

**PART 2**   THE PAUL REVERE LIFE        THE PAUL REVERE PROTECTIVE      THE PAUL REVERE VARIABLE
             INSURANCE COMPANY           LIFE INSURANCE COMPANY          ANNUITY INSURANCE COMPANY

| 1. NAME | Last | HARPER | | 2. Birthdate | 3. Birthplace |
|---|---|---|---|---|---|
| | First / Middle | DAVID M | | 10 / 12 / 53 Mo Day Yr | AR (State) |

4. Residence: Street 10500 Seven Oaks Ln  Apt #_____  5. Occupation Doctor
   City Ft. Smith   State AR   Zip 72903   Duties Orthodontics

6. Name(s) and address(es) of personal physician(s) or health care facility(ies). If none, write "none".
   Dr Paul Schwartz                              16 th st
           Ft. Smith

7. Date and reason for last consultation. 18 months ago Resting EKG, Bld/HOS Exam For Ins. Policy Issued

8. Is Proposed Insured presently under observation or treatment or taking medication?  Yes ☐  No ☑  If "Yes", give details.

| 9. Family History | Age if Living | Age at Death | Cause of Death | 10. Has any family member ever had a stroke or diabetes, cancer, high blood pressure, heart or kidney disease, mental illness, or committed suicide?  Yes ☐  No ☑  If "Yes", give details. |
|---|---|---|---|---|
| Father | 62 | | | |
| Mother | 60 | | | _____ |
| Brothers & Sisters | 41 35 29 | 0 | | _____ |

| 11. Have you, *within the past 5 years:* | Yes | No | Details of "Yes" answers. Identify question number. Circle applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. ARDLP 431 06 7432 |
|---|---|---|---|
| a. Been examined by or consulted a physician or other practitioner? | ☐ | ☑ | |
| b. Been under observation or treatment in any hospital, sanitarium, or institution? | ☐ | ☑ | |
| c. Had an X-ray, EKG, blood or urine test, or other lab tests? | ☐ | ☑ | |
| 12. Have you ever: | | | |
| a. Except as legally prescribed by a physician, used cocaine, barbiturates, heroin, or any narcotic drug? | ☐ | ☑ | |
| b. Sought or received advice for, or treatment of, or been arrested for the use of alcohol, marijuana or drugs? | ☐ | ☑ | |
| c. Been rejected for or given medical discharge from military, naval, or air service? | ☐ | ☑ | |
| 13. Are you pregnant? If "Yes", what is due date? N/A | ☐ | ☑ | |
| 14. Has your weight changed *within the past year?* | ☐ | ☑ | |

COPY

*Claimant Name: David M Harper      Claim #:  9002898*

**95**

Fax to 5524794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.    Page 48 of 52(C)

*Claimant Name: David M Harper      Claim #:  9002898*

| | Yes | No | Details of "Yes" answers. Identify question number. Cl. applicable items. Include diagnosis, dates, duration and current status. List names and addresses of all attending physicians and medical facilities. |
|---|---|---|---|
| 15. Have you ever had any known indication of or been treated for: | | | |
| a. Any disease or impairment of eyes, ears, nose or speech? | ☐ | ☒ | (15) k Lt. Ing Hernia Repair |
| b. Any type of back or spinal trouble, including sprain or strain? | ☐ | ☒ | 1985. Dr. John Weisse |
| c. Chest pain, heart murmur, high blood pressure, or any disease of the heart, blood vessels, or blood? | ☐ | ☒ | 5612 Regency Ave.  Ft. Smith, AR. No problems since ⌐ |
| d. Peptic ulcer, indigestion, or any disease of the stomach, intestines, gall bladder, or liver? | ☐ | ☒ | |
| e. Tuberculosis, asthma, pleurisy, or any disease of the chest or lungs? | ☐ | ☒ | |
| f. Kidney stone, albumin, pus, blood or sugar in urine, or any disease of the kidneys, bladder, or genital organs? | ☐ | ☒ | |
| g. Headaches, fainting spells, epilepsy, paralysis, nervousness, mental disorder, or any disease of the brain or nervous system? | ☐ | ☒ | |
| h. Rheumatic fever, syphilis, gout, arthritis, thyroid disease, diabetes, cancer, or tumor? | ☐ | ☒ | |
| i. Allergies or any disease of the skin? | ☐ | ☒ | |
| j. Any disease of the reproductive organs or breast? | ☐ | ☒ | |
| ⓚ. Any amputation or deformity, hernia or rupture, hemorrhoids or varicose veins? | ☒ | ☐ | COPY |
| 16. Have you had any surgical operation, treatment, special diet, or any illness, ailment, abnormality, or injury, not mentioned above, within the past five years? | ☐ | ☒ | |

I have read the statements and answers made above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. I understand that they will become a part of my application for insurance and any policy issued on it.

Signed at _Ft. Smith, AR_          Date _Nov 23_ _____ 19 _92_

Witness _____          X _David M. Harper_
                                      Person Examined

### COMPLETE IN ALL CASES — AUTHORIZATION FOR INFORMATION

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically-related facility, insurance company, MIB, Inc. or other organization, institution or person, that has any records or knowledge of me or my health, to give to The Paul Revere Life Insurance Co., The Paul Revere Protective Life Insurance Co., The Paul Revere Variable Annuity Insurance Co., and/or their reinsurers any such information. To facilitate rapid submission of such information, I authorize all said sources, except MIB, Inc., to give such records or knowledge to Equifax Services, The Hooper-Holmes Bureau, or American Service Bureau. A photostat of this authorization shall be as valid as the original.

_Nov 23     92_                    X _David M. Harper_
Date                                  Signature of Proposed Insured

App 51                                                              80-1

_Claimant Name: David M Harper        Claim #: 9002898_

**97**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPlumb@UNUM.COM) Req ID 2013072915402927103E.          Page 50 of 52(C)

*Claimant Name: David M Harper      Claim #:    9002898*

**98**

Fax to 5624794 (ItAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from (JPjumb@UNUN.COM) Req ID 20130729154O2927103E.          Page 51 of 52(C)

COPY

Claimant Name: David M Harper     Claim #:   9002898

**99**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:40:29 from ()Plumb@UNUM.COM) Req ID 2013072915402927103E.    Page 52 of 52(C)

COPY

DISABILITY INCOME POLICY
THE PREFERRED PROFESSIONAL

. 990 AR

91-1

Claimant Name: David M Harper      Claim #:  9002898

**100**

Document Detail
------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Document ID: 20130729154840914Z

Entry Date: 07/29/2013 15:48:43

Received Date: 07/29/2013

Date Added to Claim: 07/29/2013

Primary Doc Type: Policy

Secondary Doc Type: Contract

Document Notes: Dup Pol 1025908640

Work Notes:

Claimant Name: David M Harper        Claim #:   9002898

**101**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from ()Plumb@UNUM.COM) Req ID 2013072915465893103E.          Page 1 of 44(C)

**Plumb, Jacquelyn**

From:       Lee, Tawanna M
Sent:       Thursday, July 25, 2013 4:39 PM
To:         Kelly, Sandy; Plumb, Jacquelyn
Subject:    Dup Req

Please create duplicate and fax to 1-866-562-4794. Thanks

Name: David M Harper

Policy Number: 1025908630/ 1025908640

NL# 9002898

RECEIVED   JUL 2 9 2013

COMPLETED   JUL 2 9 2013

1

*Claimant Name: David M Harper      Claim #:   9002898*

**102**

Fax to 5624794 (HAV_WORC_FR_Vf11) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.          Page 2 of 44(C)

*Claimant Name: David M Harper       Claim #:  9002898*

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from ()Plumb@UNUM.COM) Req ID 2013072915465993103E.        Page 3 of 44(C)

# unum

# COPY

Dear Policyholder:

In the event that you become disabled and wish to file a claim with our company, please complete this form and return it to us within 30 days from the commencement of your disability. When this notice is received, we will send you the appropriate claim form.

–Policy Number(s) _____

–I have been –Totally disabled from_____ to_____

           –Partially disabled from _____ to _____

–Diagnosis or cause of disability _____

–Have you ever been disabled from this condition before? Dates? _____

–If hospitalized–name and address of hospital(s)      –Name and Address of Attending Physician(s)

_____       _____

_____       _____

_____       _____

Date of Admission(s) _____

**DISCLOSURE AUTHORIZATION**

Insured's Name (Please Print) _____

I AUTHORIZE: any doctor, health care practitioner, hospital, clinic, other medical facility or provider of health care, insurer or reinsurer, consumer reporting agency, insurance support organization, insured's agent, employer, family members, friends, neighbors or associates, the Social Security Administration or any other organization or person having any knowledge of me or my health to give The Paul Revere Life Insurance Company or its employees and agents, insured's agent, or any consumer reporting agency any information i) as to cause, treatment, or advice of my physical or mental condition; or ii) otherwise needed to determine policy claim benefits with respect to insured. This may include (but is not limited to); driving records, mental illness and use of alcohol or drugs.

I AUTHORIZE: The Paul Revere Life Insurance Company to request a report from the Medical Information Bureau (MIB), which is an association of life insurance companies that operates the Health Claim Index (HCI) for subscriber insurers. An HCI report contains the date(s) of past or present claims filed by me and the names of the companies but does not contain medical or other personal information. I understand The Paul Revere Life Insurance Company will report to MIB the date(s) of any past or present claims filed by me.

I AGREE: the information obtained with this Form may be used by Paul Revere to determine policy claim benefits with respect to insured. A photo copy of this Form is as valid as the original and I may request one. This Form will be in force for the term of coverage of the policy up to one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Paul Revere.

Date: _____    Claimant's Signature: _____

                 (Insured or insured's authorized representative)

Address _____

        (Street and Number)          (City)      (State)      (Zip Code)

Please mail Notice of Claim form to:
Unum, Customer Care Center, PO Box 15112, Worcester, MA 01615-0      112

UNUM
1 Mercantile Street, Worcester, Massachusetts 01608
508.799.4441
Claimant Name: David M Harper      Claim #:  9002898

**104**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:45:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E,          Page 4 of 44(C)

Claimant Name: David M Harper     Claim #:  9002898

**105**

**COPY**

## LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or accident and health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association. The purpose of this Association is to assure that policy and contract owners will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy owners who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

### DISCLAIMER

The Arkansas Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in the state. You should not rely on coverage by the Arkansas Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is **NOT** provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Arkansas Life and Health Insurance Guaranty Association
c/o The Liquidation Division
1023 West Capitol
Little Rock, Arkansas  72201-1904

Arkansas Insurance Department
1200 West Third Street
Little Rock, Arkansas  72201-1904

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act.") Below is a brief summary of this Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

M689                                                                                          1/04

*Claimant Name: David M Harper        Claim #:   9002898*

**106**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 20130729154659903103E.        Page 6 of 44(C)

## Coverage

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or accident and health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

## Exclusions from Coverage

However, persons owning such policies are NOT protected by the Guaranty Association if:



- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association   protects insureds who live outside that state);

- the insurer was not authorized to do business in this state;

- their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does not provide coverage for:

- Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;

- Any policy of reinsurance (unless an assumption certificate was issued); 

- Interest rate yields that exceed an average rate;

- Dividends and voting rights and experience rating credits;

- Credits given in connection with the administration of a policy by a group contract holder;

- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

- Unallocated annuity contracts (which give rights to group contractholders, not individuals);

- Unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC") (whether the FPBC is yet liable or not);

- Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution);

- Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;

- Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;

- Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

## Limits on Amount of Coverage

The Act also limits the amount the Guaranty Association is obligated to cover. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provide different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $300,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values – again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.

M689                                                                                    1/04

*Claimant Name: David M Harper      Claim #:  9002898*

**107**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.         Page 7 of 44(C)

# THE PAUL REVERE LIFE INSURANCE COMPANY

18 Chestnut Street, Worcester, MA 01608

## BUSINESS OVERHEAD EXPENSE COVERAGE
## REQUIRED OUTLINE OF COVERAGE
### (Policy Form No. 908 AR)



**(1) READ YOUR POLICY CAREFULLY.** This outline of coverage provides a very brief description of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY!

**(2)** Business Overhead Expense coverage is designed to provide you with coverage for business expenses incurred while disabled as a result of a covered accident or sickness. Coverage is provided as outlined in Paragraph (3). The benefits described in Paragraph (3) may be limited in Paragraph (4).

**(3) BENEFITS**

    (a) Basic Policy

Your policy insures you against the loss of ability to pay the overhead expenses of your business. We will pay you a benefit equal to the covered monthly expense you actually incur, while totally disabled, in the operation of your business. The benefit amount payable may exceed the maximum covered monthly expense benefit shown on the Policy Schedule if benefits have accumulated as described in your policy. However, the amount payable will never exceed the maximum total benefit shown on the Policy Schedule.

*Totally disabled* means you are sick or injured and under a physician's care. It means you are unable to do the important duties of your regular occupation.

*Covered monthly expenses* are those fixed monthly expenses that are ordinary and necessary in the operation of your business. They are the expenses you pay and include such items as rent, utilities and wages. They do not include your own salary or that of someone hired to perform your duties. Also, they do not include expenses directly associated with the generation of income.

Benefits will begin on the Commencement Date. That date is shown on the Policy Schedule.

We will pay you this benefit up to the number of months shown on the Policy Schedule while you are totally disabled. This is the maximum benefit period for each continuous total disability. But if you are totally disabled for that entire period and the total benefit paid is less than the maximum total benefit, then we will continue the benefit while you remain disabled. Under this extension, we can continue to pay the benefit up to 30 months, but not beyond when the total amount paid equals the maximum covered monthly expense times the maximum benefit period.

Your basic policy has other benefits. If sickness or injury causes you to totally lose forever your speech, hearing, sight or use of two limbs, we will presume you are totally disabled, and pay benefits from the date of loss.

While you are partially disabled, we will pay you one-half of the benefit that would have been payable if you had been totally disabled. We will pay this benefit while your partial disability continues, but not for more than three months, or beyond the maximum benefit period, whichever is earlier.

*Partial disability* means you are sick or injured and under the regular care of a physician. It means you are either unable to do the important duties of your occupation at least 80% of the time usually required or you can't perform one or more of these important duties.

Your policy may include a benefit that allows automatic increases to your policy. If so, your covered monthly expense benefit will increase automatically by the amount selected. Each increase will be effective for five years and an additional premium will be charged for each increase.

M828-2

Policy Form No. 908 AR
91-1

Claimant Name: *David M Harper*        Claim #:  *9002898*

**108**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.          Page 8 of 44(C)

At anytime before you reach age 60, you can ask to exchange this policy for one of our loss of time policies. If you qualify, we will issue you a comparable loss of time policy with up to a $2000 monthly benefit or 25% of the monthly benefit of this policy, if it is less.

After you are totally disabled for a period of 90 days, we will waive the premium. You will not have to start paying it again until you recover from your disability. And we will refund the premiums you paid during the 90-day wait.

You have an option to continue this policy. As long as you actively work full time and re-main responsible for maintaining the expenses of your office, you can continue the policy. After age 75 the maximum monthly covered expense benefit will be reduced by one half.

(b) Optional Benefits

If you have selected optional benefits, they are shown on the attached Policy Schedule.

## (4) EXCLUSIONS, LIMITATIONS, REDUCTIONS

Your policy covers losses due to injuries that happen while the policy is in force. It covers losses due to sicknesses that first appear while the policy is in force.

We will not pay benefits for a disability caused by a pre-existing condition of which you were aware before the Date of Issue if it was not disclosed on your application.

Disabilities due to war are not covered. We will not pay benefits while you are incarcerated. Any loss we exclude by name or description in the Policy Schedule will not be covered. Normal pregnancy or childbirth are covered after you have been disabled for 90 days. (If rider A671 is attached to your policy, normal pregnancy or childbirth ARE NOT covered.)

We can contest the statements made in your application during the first two years the policy is in force. After that, benefits cannot be reduced or stopped on the grounds that a disease or condition existed before the policy went in force.

If a disability is caused by more than one sickness or injury or both, benefits will be paid as if caused by only one.

## (5) RENEWABILITY

As long as the premium is paid on time, we cannot cancel or change your policy. We cannot change the premium rates before you reach age 65.

There is no age limit for renewals provided: 1) you are actively and regularly employed at least 30 hours per week; and 2) you are responsible for the expense of maintaining an office or business; and 3) the premium is paid on time. However, as of age 75 benefits will be re-duced by 50%.

## (6) TEN-DAY FREE LOOK

You have ten days to review this policy. If you decide you do not want to keep it, send it back to the Agent or Company within ten days of receiving it and you will get a refund of all pre-miums you have paid.

## (7) PREMIUMS. *See attached Policy Schedule.*

To keep your policy in force, the premium must be paid within 31 days after it is due.

COPY

*Claimant Name: David M Harper     Claim #:  9002898*

**109**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.   Page 9 of 44(C)

THE PAUL REVERE LIFE
INSURANCE COMPANY

THE PAUL REVERE
PROTECTIVE LIFE
INSURANCE COMPANY

THE PAUL REVERE
VARIABLE ANNUITY
INSURANCE COMPANY

PLEASE READ THE FOLLOWING IMPORTANT NOTICE

COPY

The following information is required by the State of Arkansas to be delivered for all policies:

**Policyholder Service Office:**

18 Chestnut Street
Worcester, Massachusetts 01608
Telephone: (508)799-4441

**Soliciting Agents Representative:**

See accompaning card
for Agent's name, Address and
Telephone number.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

**Arkansas Insurance Dept.**
Consumers Service Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
Telephone: (501)371-2640

M602

88-8

*Claimant Name: David M Harper*     *Claim #: 9002898*

# 110

Claimant Name: David M Harper       Claim #:   9002898

THE PAUL REVERE LIFE INSURANCE COMPANY

Secretary

A&S 152 S-82                                                                                    82-2

COPY

Claimant Name: David M Harper      Claim #:  9002898

**112**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from ()Plumb@UNUM.COM) Req ID 2013072915465893103E.                Page 12 of 44(C)

*Claimant Name: David M Harper      Claim #:  9002898*

**113**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from ()Plumb@UNUM.CON) Req ID 20130729154658931D3E.       Page 13 of 44(C)

## THE PAUL REVERE LIFE INSURANCE COMPANY

### ADDRESS CHANGE ENDORSEMENT

COPY

Endorsement Date: **March 2013**

This endorsement is made part of the policy, contract or certificate as of the Endorsement Date. It should be attached to and kept with the policy, contract or certificate.

The following address as it may appear on the face page or within the text of the policy, contract or certificate is *deleted:*

**18 Chestnut Street**
Worcester, MA 01608

The following address is *substituted:*

**1 Mercantile Street**
Worcester, MA 01608

You should continue to use the same telephone numbers as before to make requests, ask questions or otherwise receive service under the policy, contract or certificate unless we have asked you to use different ones.

In all other respects, the terms and provisions of the policy, contract or certificate remain unchanged and in full force and effect.


President and Chief Executive Officer          Corporate Secretary


AMD-141-PRL


*Claimant Name: David M Harper     Claim #:  9002898*

**114**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 201307291546589303103E.        Page 14 of 44(C)

*Claimant Name: David M Harper      Claim #:  9002898*

**115**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (DPlumb@UNUM.COM) Req ID 2013072915465B93103E.          Page 15 of 44(C)



# THE PAUL REVERE
## LIFE INSURANCE COMPANY

COPY

### 18 CHESTNUT STREET
### WORCESTER, MASSACHUSETTS 01608

The Paul Revere Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of the Policy.

| | |
|---|---|
| **Insured** | DAVID M HARPER DDS |
| **Owner** | DAVID M. HARPER, DDS, MS, PA |
| **Policy Number** | 0102590864   JAN 09, 1993     Date of Issue |

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65, SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit while:

1. You are actively and regularly employed at least 30 hours per week; and
2. You are responsible for the expense of maintaining an office or business; and
3. The premium is paid on time.

If these conditions are not met Your Policy will end.  There is no age limit for renewal. However, as of age 75 benefits will be reduced as explained in PART 7.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for The Paul Revere Life Insurance Company.

Secretary                                    President and CEO

CHARTERED IN MASSACHUSETTS

## Table of Contents

|  | Page |
|---|---|
| Renewal Provisions | 1 |
| Your Right to Cancel | 1 |
| Policy Schedule | 3 |
| Part 1 — Definitions | 8 |
| Part 2 — Benefits | |
| Total Disability Benefit | 8 |
| Survivor Benefit | 8 |
| Accumulation Benefit | 8 |
| Extension of Benefits | 9 |
| Presumptive Total Disability | 9 |
| Partial Disability | 9 |
| Limited Right to Reduce Benefits | 10 |
| Conversion Privilege | 10 |
| Part 3 — Exclusions | 11 |
| Pre-existing Conditions Limitation | 11 |
| Part 4 — Premium and Reinstatement Disability | 11 |
| Part 5 — Waiver of Premium | 12 |
| Part 6 — Recurrent and Concurrent Disability | 12 |
| Part 7 — Renewal Option | 13 |
| Part 8 — Claims | 13 |
| Part 9 — The Contract | 14 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of this Policy.

COPY

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.          Page 17 of 44(C)

## POLICY SCHEDULE

POLICY NUMBER:  0102590864              DATE OF ISSUE:  JAN 09, 1993

INSURED:      DAVID M HARPER DDS

OWNER:        DAVID M. HARPER, DDS, MS, PA        COPY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### SUMMARY OF PREMIUM   PREFERRED NONSMOKER

| | |
|---|---|
| ANNUAL PREMIUM FOR DISABILITY BENEFITS | $1,264.00 |
| ANNUAL PREMIUM FOR ADDITIONAL BENEFITS | NONE |
| TOTAL ANNUAL PREMIUM | $1,264.00 |
| *SELECT 15 ANNUAL PREMIUM | $1,074.40 |
| YOUR MONTHLY PREMIUM | $92.90 |
| EMPLOYEE SECURITY PLAN | |

*YOU HAVE A SELECT PREMIUM AS INDICATED.
THIS PREMIUM WILL REMAIN IN EFFECT UNTIL YOUR 65TH BIRTHDAY.  IT IS
SUBJECT TO CHANGE IF YOU RENEW YOUR POLICY AFTER YOUR 65TH BIRTHDAY.

DURING THE 1ST POLICY YEAR ONLY, YOUR MONTHLY PREMIUM IS    $78.97

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TABLE OF DISABILITY BENEFITS

| COMMENCEMENT DATE | MAXIMUM COVERED MONTHLY EXPENSE BENEFIT | MAXIMUM BENEFIT PERIOD* | MAXIMUM TOTAL BENEFIT |
|---|---|---|---|
| 91ST DAY | $15,000.00 | 15 MONTHS | $225,000.00 |

*BENEFITS MAY BE EXTENDED BY THE EXTENSION OF BENEFITS SECTION IN YOUR
POLICY.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MODIFICATION OF COVERAGE

NONE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

908        DISABILITY INCOME POLICY FOR BUSINESS OVERHEAD EXPENSE        91-1

*Claimant Name: David M Harper     Claim #:  9002898*

**118**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from ()Plumb@UNUM.COM) Req ID 201307291546SB93103E.    Page 18 of 44(C)

*Claimant Name: David M Harper    Claim #: 9002898*

**119**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465993103E.        Page 19 of 44(C)

POLICY SCHEDULE II

POLICY NUMBER: 0102590864            DATE OF ISSUE:  JAN 09, 1993

INSURED:        DAVID M HARPER DDS

OWNER:          DAVID M. HARPER, DDS, MS, PA

**********************************************************************

AUTOMATIC INCREASES

   $500 WILL BE AUTOMATICALLY ADDED TO YOUR MAXIMUM COVERED MONTHLY EXPENSE
BENEFIT WITHOUT EVIDENCE OF INSURABILITY.  THIS WILL BE DONE ON EACH
INCREASE DATE.

   THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.
THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY
ARE LISTED BELOW.

| INCREASE DATE | MONTHLY COVERED INCREASE EXPENSE BENEFIT | ANNUAL PREMIUM INCREASE |
|---|---|---|
| JAN 09, 1994 | $500.00 | $36.30 |
| JAN 09, 1995 | $500.00 | $38.85 |
| JAN 09, 1996 | $500.00 | $41.40 |
| JAN 09, 1997 | $500.00 | $43.90 |
| JAN 09, 1998 | $500.00 | $46.45 |
| TOTAL INCREASE | $2,500.00 | $206.90 |

YOUR MAXIMUM TOTAL BENEFIT WILL INCREASE BY   $37,500.00

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE
INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY.
SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR
THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE
DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME
PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM
FOR THE INCREASE.

YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE
INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING
AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE
INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.

PRIOR TO YOUR 60TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC
INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD
OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE SHOWN ABOVE.
APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

*Claimant Name: David M Harper        Claim #:  9002898*

**120**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 201307291545893103E.     Page 20 of 44(C)

*Claimant Name: David M Harper     Claim #: 9002898*

**121**

# PART 1
# DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPOR-
TANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY.
REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1 "Policy" means the legal contract between You and Us. The Policy, the
application, the Policy Schedule, and any attached papers that We
call riders, amendments, or endorsements make up the entire con-
tract between You and Us.

1.2 "You" and "Your" refer to the insured named in the Policy Schedule.

1.3 "Owner" refers to the person or entity named as Owner in the Policy
Schedule.

1.4 "We" and "Us" refer to The Paul Revere Life Insurance Company. Our
Home Office is 18 Chestnut Street, Worcester, Massachusetts 01608.

1.5 "Date of Issue" means the date that the Policy becomes effective. It is
shown on the Policy Schedule.

1.6 "Injury" means accidental bodily injury sustained after the Date of Issue
and while Your Policy is in force.

1.7 "Sickness" means sickness or disease which first manifests itself after the
Date of Issue and while Your Policy is in force. It includes Disability
due to complications of pregnancy or childbirth. It includes Disability
due to normal pregnancy or childbirth after You have been Disabled
for 90 days.

1.8 "Physician" means any licensed practitioner of the healing arts practicing
within the scope of his or her license. A Physician must be a person
other than You.

1.9 "Physician's Care" means the regular and personal care of a Physician
which, under prevailing medical standards, is appropriate for the
condition causing the disability.

1.10 "Your Occupation" means the occupation or occupations in which You
are regularly engaged at the time Disability begins.

1.11 "Total Disability" means that because of Injury or Sickness:
    a.  You are unable to perform the important duties of Your Occu-
pation; and
    b.  You are receiving Physician's Care. We will waive this re-
quirement if We receive written proof acceptable to Us that
further Physician's Care would be of no benefit to You.

1.12 "Partial Disability" means that because of Injury or Sickness:
    a.  You are:
        (1)  Unable to perform one or more of the important duties of
Your Occupation; or
        (2)  Unable to perform the important duties of Your Occupation
for more than 80% of the time normally required to per-
form them; and
    b.  You are receiving Physician's Care. We will waive this re-
quirement if We receive written proof acceptable to Us that
further Physician's Care would be of no benefit to You; and
    c.  You are not Totally Disabled.

Partial Disability must follow right after a period of Total Disability that
continues at least to the Commencement Date.

COPY

908 AR                                   -6-                                   91-1

*Claimant Name: David M Harper        Claim #:  9002898*

**122**

Fax to 5524794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 20130729154658993103E.   Page 22 of 44(C)

1.13 "Disability" or "Disabled" refers to a continuing period of Total, and/or Partial Disability.

Successive periods will be deemed to be continuing if:
a. Due to the same or related causes; and
b. Separated by no more than 6 months.

Otherwise such periods will be deemed to be new and separate Disabilities.

1.14 "Commencement Date" is the day shown on the Policy Schedule when Disability benefits begin during a Disability.

1.15 "Maximum Benefit Period" is the longest period of time We will pay benefits during a Disability. It is shown on the Policy Schedule. But it may be increased under the EXTENSION OF BENEFITS section in Part 2.

1.16 "Maximum Covered Monthly Expense Benefit" is the maximum monthly amount payable under this Policy, except where a larger benefit is payable as described in the Accumulation Benefit.

1.17 "Maximum Total Benefit" is the maximum total amount payable for a Disability. This amount is shown on the Policy Schedule. This includes all Disability amounts payable under this Policy.

1.18 "Cost of Sales or Services" means Your share of all expenses incurred in Your Occupation directly associated with the generation of income by or for Your business or profession. It includes but is not limited to:
a. the salary, other remuneration, including benefits, for:
   (1) Any member of Your profession; or
   (2) Any person sharing business expenses with You; or
   (3) Any person employed to perform your duties; or
   (4) Any person directly responsible for the generation of income for Your business or profession.

Some other examples of these expenses are:
b. Medical or dental supplies
c. Lab fees
d. X-ray fees

Cost of Sales or Services does not include Your salary or other remuneration for You, including benefits.

1.19 "Covered Monthly Expense" means those fixed, monthly expenses incurred in Your Occupation that are ordinary and necessary in the operation of Your business or profession. If You share those expenses with someone else, We will include only Your share. They include, but are not limited to, such expenses as:

| | |
|---|---|
| a. Rent | g. Office supplies |
| b. Utilities | h. Business liability insurance |
| c. Telephone | premiums |
| d. Employees' wages | i. Professional dues & memberships |
| e. Leased equipment | j. Interest on debt |
| f. Rental equipment | k. Depreciation or scheduled installment payments of principal of debt incurred for purchase of depreciable assets |

At the beginning of a period of Disability You must choose whether to claim depreciation or payment of principal of debt. The choice can be made only once for each separate Disability.



-7-

"Covered Monthly Expense" does not include such expenses as:

    a.  Salary, or other remuneration, including benefits, for:
        (1)  You; or
        (2)  Any member of Your family unless that person was em-
            ployed 60 days prior to Your Disability.
    b.  Cost of Sales or Services
    c.  Additions to Inventory
    d.  Travel and entertainment
    e.  Expenses for which You were not periodically liable prior to the
       start of Disability.

## PART 2
## BENEFITS

The monthly benefits payable under this Policy are subject to the terms of Part 8 "Claims."

### 2.1   TOTAL DISABILITY BENEFIT

We will periodically pay a Total Disability benefit during Your continuous Total Disability.

The amount We will pay is equal to the Covered Monthly Expense You actually incur, while Totally Disabled. The benefit amount payable may exceed the Maximum Covered Monthly Expense Benefit if benefits have been accumulated as described in the Accumulation Benefit. In no event will the amount payable for a period of Total Disability exceed the Maximum Total Benefit.

This benefit will begin on the Commencement Date. We will continue to pay it while You are Totally Disabled. But We will not pay it beyond the Maximum Benefit Period unless that period is extended by the EXTENSION OF BENEFITS section.

If this benefit is payable for a part of a month, the daily rate We will pay equals: 1/30th of the amount that would have been payable for the whole month.

An expense covering more than one month will be pro rated to determine the expense for each month.

### 2.2   SURVIVOR BENEFIT

If You die after the Commencement Date and prior to age 65, and while You are eligible for Total Disability benefits, We will pay a single sum benefit. The amount of this benefit will be 1.5 times the Maximum Covered Monthly Expense Benefit. But the payment of this benefit will not cause the Maximum Total Benefit to be exceeded. Upon proof of death, We will pay:

    a.  The owner of the Policy; or
    b.  The person You have named in writing to Us.

### 2.3   ACCUMULATION BENEFIT

The Covered Monthly Expense in any one month of Total Disability may be less than the Maximum Covered Monthly Expense Benefit. If so, any such unused benefit may be carried forward and applied to the Covered Monthly Expense in a later month of the same period of Total Disability when the Covered Monthly Expense exceeds the Maximum Covered Monthly Expense Benefit.

*What is the Total Disability benefit?*

*What happens if insured dies while benefits are payable?*

*Can Unused benefits be carried forward?*

COPY

*Claimant Name: David M Harper    ·  Claim #:  9002898*

**124**

Fax to 5624794 (IIAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 2013072915465893103E.      Page 24 of 44(C)

| | |
|---|---|
| **Can excess expenses be reimbursed in a later month?** | The Covered Monthly Expense in any one month of Total Disability may be greater than the Maximum Covered Monthly Expense Benefit. If so, any such excess expense may be carried forward and reimbursed in a later month of the same period of Total Disability when the Covered Monthly Expense is less than the Maximum Covered Monthly Expense Benefit.

In no event will the amount We pay during Total Disability exceed the Maximum Covered Monthly Expense Benefit times the number of months for which Total Disability Benefits have been payable. |

**2.4   EXTENSION OF BENEFITS**

We can continue to pay Disability benefits beyond the Maximum Benefit Period while You remain Disabled if:

<table>
<tr><td></td><td>a.</td><td>You were Disabled for the entire Maximum Benefit Period; and</td></tr>
<tr><td><strong>Can benefits be extended?</strong></td><td>b.</td><td>The sum of all Disability benefits paid during that period is less than the Maximum Total Benefit.</td></tr>
</table>

But We will not pay the Disability benefits beyond:

a.   A total amount equal to the Maximum Total Benefit; or
b.   A period of 30 months.

**2.5   PRESUMPTIVE TOTAL DISABILITY BENEFIT**

If Injury or Sickness causes You to totally and irrecoverably lose:

a.   Your speech; or
b.   Your hearing in both ears; or
c.   Your sight in both eyes; or
d.   Use of both hands; or
e.   Use of both feet; or
f.   Use of one hand and one foot;

**Can Total Disability be automatically assumed?**

We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care. We will pay the Total Disability benefit as set forth in the TOTAL DISABILITY BENEFIT section.

**What is the Partial Disability benefit?**

**2.6   PARTIAL DISABILITY BENEFIT**

This benefit will begin on the day after Your Total Disability ends. We will pay it while Your Partial Disability continues but not for more than three straight months during any Disability. In no event will the benefit payable cause the Maximum Total Benefit to be exceeded.

The amount of this benefit is equal to 50% of the Maximum Covered Monthly Expense Benefit.

COPY

-9-

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 201307291546589310E.          Page 25 of 44(C)

### 2.7   LIMITED RIGHT TO REDUCE BENEFITS

The monthly benefits payable under this Policy may be reduced if You have other coverage for overhead expenses with Us or any other insurer.  The Covered Monthly Expense will be reduced as follows:

a. The Covered Monthly Expense
   multiplied by
b. The Maximum Covered Monthly Expense Benefit divided by the total of:
   -the Maximum Covered Monthly Expense Benefit; plus
   -the maximum monthly benefits payable under all other overhead
    expense policies.

The Covered Monthly Expense will equal:

$$\text{Covered Monthly Expense} \times \frac{\text{Maximum Covered Monthly Expense Benefit}}{\text{Maximum monthly benefit of all policies}}$$

*Can We reduce benefits if you have other overhead expense coverage?*

### 2.8   CONVERSION PRIVILEGE

At any time before You reach age 60, You may ask to convert this Policy to one of Our disability income policies providing substantially equivalent benefits if:

a. This Policy is then in force; and
b. You send Us a written request; and
c. You have not been Disabled for the six months just prior to the request for conversion.

Payment of benefits under our disability income policies does not depend on the Covered Monthly Expense You incur.

You may elect the monthly amount of the benefit under the new policy, but that monthly amount cannot exceed:

a. 25% of the Maximum Covered Monthly Expense Benefit shown on the Policy Schedule; or
b. $2000;

whichever is less.

And in no event can the monthly amount of the benefit, when added to similar benefits under all disability income coverage You have with any company, exceed Our limits.  By "limits" We mean the maximum disability income coverage We offer to new applicants of Your class of risk according to Our issue and participation limits in effect at the time of Your request.

For purposes of the INCONTESTABLE clause, the Date of Issue of the new policy will be the same as for this Policy. Except for that, the Date of Issue of the new policy will be the date We receive Your written request at Our Home Office.

The premium for the new policy will be the rate We charge for Your class of risk and age on the Date of Issue of the new Policy.

The new policy will cover only losses occurring while it is in force. It will exclude only conditions excluded by this Policy.

*When can this coverage be converted to loss of time coverage?*

COPY

908 AR                                    -10-                                    91-1

*Claimant Name: David M Harper     Claim #:  9002898*

**126**

Fax to 5624794 (NAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 201307291546599310ЗЕ    Page 26 of 44(C)

### PART 3
### EXCLUSIONS

**3.1    EXCLUSIONS**

*What if Disability results from war or normal pregnancy?*

We will not pay Policy benefits:

    a.   Due to an act or accident of war, whether declared or undeclared; or

    b.   Due to normal pregnancy or childbirth, except as described in the definition of "Sickness".

    c.   For any period You are incarcerated.

**3.2    PRE-EXISTING CONDITIONS LIMITATION**

*What if Disability results from a Pre-existing Condition?*

We will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application. Pre-existing Condition means a sickness or physical condition for which symptoms existed prior to the Date of Issue that would cause an ordinarily prudent person to:

    a.   Seek diagnosis, care, or treatment within a five-year period prior to the Date of Issue; or

    b.   For which medical advice or treatment was recommended by or received from a physician within a five-year period prior to the Date of Issue.

Also, We will not pay benefits for any loss We have excluded by name or specific description.

### PART 4
### PREMIUM AND REINSTATEMENT

**4.1    PAYMENT OF PREMIUM**

*When are premiums due?*

The first premium on Your Policy is payable on the Date of Issue. After that, premiums are payable in the amount and mode shown on the Policy Schedule. Payment may be made at Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608 or to Our agent.

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But We will not allow a change while You are Disabled.

**4.2    GRACE PERIOD**

*What happens if a premium payment is late?*

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium. Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

COPY

*Claimant Name: David M Harper    Claim #: 9002898*

**127**

Fax to 5624794 (HAV_WORC_FR_WL1) received at 07/29/2013 15:46:59 from (JPlumb@UNUM.COM) Req ID 20130729154569D3109E.                    Page 27 of 44(C)

### 4.3   REINSTATEMENT

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application. We will issue You a conditional receipt for the premium. If We approve Your application, the Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.

The reinstated Policy will cover only loss due to;
    a.  Injury sustained after the date of reinstatement; or
    b.  Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

### 4.4   PREMIUM REFUND

If You cancel this Policy We will refund any premium paid for a period beyond the month of cancellation.

Upon notice of your death, We will make a pro rata refund of any premium paid for a period beyond the month of Your death.

# PART 5
# WAIVER OF PREMIUM

### 5.1   WAIVER OF PREMIUM

After You have been Totally Disabled for 90 days, We will waive any premium that becomes due while You remain Totally Disabled.  Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium that became due and was paid during those first 90 days of Total Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

# PART 6
# RECURRENT AND CONCURRENT DISABILITY

### 6.1   RECURRENT DISABILITY

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability.  But if such recurrence occurs within 6 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Recurrent Disability separated by 6 months or less will be deemed to be continuing in order to determine the Commencement Date and maximum period and amounts payable.

### 6.2   CONCURRENT DISABILITY

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

*How can a lapsed Policy be reinstated?*

*Is there any premium refund?*

*When will premiums be waived?*

*What if a Disability reoccurs?*



*What if a Disability is due to two causes at the same time?*

*Claimant Name: David M Harper          Claim #:  9002898*

**128**

## PART 7
## RENEWAL OPTION

**7.1    RENEWAL OPTION**

*Can this Policy be renewed after age 65?*

After Your 65th birthday You may continue Your Policy for the Total Disability benefit while:

    a.  You are actively and regularly employed at least 30 hours per week; and

    b.  You are responsible for the expenses of maintaining an office or business; and

    c.  The premium is paid on time. The premium will be at the rate in effect for Your rating group on each due date.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

The Policy must be in force when You elect this option.

If You elect this option, and Total Disability starts before age 75, We will pay the same benefits subject to the same provisions, exceptions, and limitations in the Policy. See Section 7.2 for Total Disability starting as of age 75.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option, will be returned to You.

**7.2    TOTAL DISABILITY BENEFIT - REDUCED AT AGE 75**

*Will benefits be reduced after age 75?*

For Total Disability starting on or after Your 75th birthday, Your Maximum Covered Monthly Expense Benefit and the Maximum Total Benefit will be reduced by 50% of the benefits shown on the Policy Schedule. But, the Maximum Benefit Period will remain the same.

## PART 8
## CLAIMS

**8.1    TIME OF LOSS**

*When must losses occur?*

All losses must occur while Your Policy is in force. But termination of Your Policy will not affect any claim for Total Disability that begins within 30 days of the date of an injury causing such Disability.

**8.2    WRITTEN NOTICE OF CLAIM**

*When must written notice be given?*

Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Home Office, 18 Chestnut Street, Worcester, Massachusetts 01608 or is given to Our agent.

**8.3    CLAIM FORMS**

*Is there a form for proof of loss?*

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

COPY

-13-

### 8.4  WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected.  But, unless You are legally incapacitated, written proof must be given within one year.

We can also require reasonable proof from You of Your Covered Monthly Expense.  This may include personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us or which We may require.  We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

*When must written proof of loss be submitted?*

### 8.5  TIME OF PAYMENT OF CLAIMS

After We receive written proof of loss:

    a.  We will pay any benefits then due that are not payable period-ically; and

    b.  We will pay at the end of each 30 days any benefits due that are payable periodically – subject to continuing proof of loss.

*When will benefits be paid?*

### 8.6  PAYMENT OF CLAIMS

All benefits will be paid to the Owner. But if any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to $1,000 to one of Your relatives who We believe is entitled to it.  If We do that in good faith, We will not be liable to anyone for the amount We pay.

*To whom will benefits be paid?*

### 8.7  EXAMINATIONS

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is pending.

*Can there be an independent medical exam performed?*

### 8.8  MISSTATEMENT OF AGE

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

*What if there is a misstatement of age?*

## PART 9
## THE CONTRACT

### 9.1  ENTIRE CONTRACT; CHANGES

This Policy (with the application and attached papers) is the entire contract between You and Us.  No change in this Policy will be effective until approved by a Company officer.  This approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

*Can the Policy be changed?*

COPY

*Claimant Name: David M Harper          Claim #:  9002898*

**130**

*For how long is the Policy contestable?*

**9.2   INCONTESTABLE**

    a.   After Your Policy has been in force for two years, excluding any time You are Disabled, We cannot contest the statements in the application.

    b.   No claim for loss incurred or Disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.

*What if the Policy differs with state requirements?*

**9.3   CONFORMITY WITH STATE STATUTES**

Any provisions in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

*When can legal action be brought under this Policy?*

**9.4   LEGAL ACTION**

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after three years from the date written proof of loss is required to be given.

COPY

-15-

**Claimant Name: David M Harper        Claim #:  9002898**

**131**